BRADY v. RICHEY & CASEY.    (No. 5979.)

(Court of Civil Appeals of Texas.    San Antonio.    March 6, 1918.    Rehearing Denied April 3, 1918.)

1. BROKERS ☞88(2)—TRIAL—QUESTIONS FOR JURY—EMPLOYMENT OF BROKER.

There being sufficient evidence to sustain finding that defendant either impliedly or expressly employed the plaintiffs as brokers, through their representative, to lease his theater, a peremptory instruction for defendant in action for commission was properly refused.

2. BROKERS ☞71—ACTIONS FOR COMPENSATION—JUDGMENT—IMPLIED CONTRACT.

An express contract to pay brokers the reasonable value of their services in procuring a lease is unnecessary to support a judgment for commission which is supported by evidence showing an implied agreement therefor.

3. EVIDENCE ☞553(3)—EXPERT TESTIMONY—VALUE OF SERVICES—HYPOTHETICAL QUESTION.

The age, experience, and average monthly earnings of brokers' representative are not facts to be considered in determining reasonable value of brokers' services for work done largely by such representative, and a hypothetical question based thereon was properly excluded.

4. APPEAL AND ERROR ☞1003 — REVIEW — VERDICT AGAINST THE WEIGHT OF EVIDENCE —CONCLUSIVENESS.

Where there was evidence to sustain a verdict that the owner of a theater knew, or should have known, when accepting their services, in leasing theater, that brokers were his and not tenant's agents, the verdict will not be set aside, although the preponderance of the evidence appears otherwise.

5. APPEAL AND ERROR ☞1051(2)—HARMLESS ERROR.

Although it was error to admit the conclusion of a witness that when a broker negotiates a lease the owner passes upon responsibility of the tenant, yet, where the owner accepted tenant and was satisfied with rent contract, it was not reversible error.

6. BROKERS ☞69—COMPENSATION—TRIAL—VERDICT—EXCESSIVE.

A verdict of 2 per cent. of the total rent of $270,000 for a theater for 15 years for broker's compensation of leasing, where lease provided lessee could breach same on forfeiture of $9,000 deposited, and owner testified services were worth $13,500 if rent for full time should be paid, is not excessive.

7. BROKERS ☞88(13)—ACTION FOR COMPENSATION — TRIAL — INSTRUCTION — EMPLOYMENT AND RIGHT TO COMPENSATION.

The objection that an instruction requires a jury to find for a broker his commission for services, without requiring a finding that the services were rendered and accepted with expectation that owner would pay same, is without merit, where facts are such the law implies promise to pay reasonable value for such services.

8. TRIAL ☞252(4)—INSTRUCTION TO JURY—SUFFICIENCY OF EVIDENCE TO WARRANT INSTRUCTION.

Instruction on the question of brokers' agent being the agent of tenant in procuring a lease for landlord was properly refused, where there was no evidence on such question.

9. BROKERS ☞88(9)—ACTIONS FOR COMPENSATION — TRIAL — ABANDONMENT AND RE-EMPLOYMENT AFTER COMMISSION EARNED.

The refusal of instruction that if after securing contract to make lease of theater, the landlord entered into a contract with brokers' agent, etc., was not error, where the commission was payable to the brokers and not their agent, for such employment could not release the obligation for payment of commission.

10. BROKERS ☞81—ACTIONS FOR COMPENSATION—PARTIES.

In action by brokers for commission for leasing landlord's theater to tenant, because the evidence showed brokers' agent was to get a part of the commission did not require his being made party plaintiff or limit brokers' recovery, since he was not a partner.

Appeal from District Court, Bexar County; J. T. Sluder, Judge.

Action by Richey & Casey against Thomas F. Brady. Judgment for plaintiffs, and defendant appeals. Affirmed.

Denman, Franklin & McGown, of San Antonio, for appellant. Boyle, Exell, Houston & Grover and Wm. C. Church, all of San Antonio, for appellees.

SWEARINGEN, J. This cause was reviewed and reversed by this court upon a former appeal. The opinion is reported in 187 S. W. 508. The pleadings and evidence are for all practical purposes the same as appeared in the record upon the first appeal, except that by a trial amendment appellees made the following allegations:

"That the said R. C. Hill as agent for these plaintiffs carried on negotiations for several months, by which he procured W. J. Lytle to

lease defendant's said property, with the full knowledge, consent, and approval of defendant, and said services and the benefits thereof were accepted by defendant with the understanding, express or implied, that defendant would pay plaintiffs the reasonable value thereof; that said services so rendered were and are of the reasonable value of $5,400, wherefore defendant became and is indebted to plaintiffs in the sum of $5,400 with interest thereon from and after September 10, 1914, at 6 per cent. per annum, and plaintiffs pray for judgment therefor as in their second amended original petition"
—and except that appellant by a third amended answer set up a plea in abatement, alleging that R. C. Hill was the owner of one-third interest in the claim sued for, and alleged a conspiracy to defraud appellant by concealing from him the intention to charge a commission for services until Mr. Brady signed the lease contract. Because the record before us is the same as that presented on the appeal from the first trial, we adopt the statement of the nature and result of the suit, the statement of the pleadings, with the exceptions above mentioned, and the findings of facts expressed in the opinion heretofore rendered by Mr. Justice Moursund, and for convenience quote them herein:

"R. A. Richey and L. A. Casey, composing the firm of Richey & Casey, sued Thos. F. Brady for $5,400, with interest thereon at the rate of 6 per cent. per annum, alleging: That plaintiffs were engaged in the real estate rental and brokerage business in the city of San Antonio and in order to properly conduct the same were compelled to employ many agents; that defendant Brady is the owner of a certain building, a portion of which is adapted and intended for use as a theater; that 'on or about February 1, 1914, plaintiffs, acting by and through one of their said agents and employés, to wit, R. C. Hill, were duly employed by said defendant, as his agent, by directly soliciting their services, by approving and participating in all negotiations and by agreeing to, acquiescing in, and accepting the benefits of said services and negotiations, to secure a responsible tenant under contract of lease for said theater, said lease to cover a period of 15 years, at a monthly rental of $1,500, payable in advance, the yearly rental of said theater being the sum of $18,000, or for a total amount of $270,000 for the full term of said 15 years; that in pursuance of said employment by said defendant, plaintiffs acting by and through their said agent and employé, R. C. Hill, immediately proceeded to carry out the terms and conditions of their said employment by energetic negotiations for securing a tenant for said theater, under the terms and conditions and for the period of time for which the same was to be leased, said defendant participating in said negotiations, instructing said plaintiffs by and through said Hill how such negotiations should be conducted, said negotiations being directed at and confined to one W. J. Lytle, until on or about July 21, 1914, when plaintiffs, acting by and through said Hill, succeeded in successfully closing a contract in writing for the lease of said theater, the same being made and entered into by and between the defendant and the said Lytle, under the terms and conditions heretofore set out, to wit, at the rate of $1,500 per month for the full term of 15 years, said contract of lease being prepared by said plaintiffs, acting by and through said Hill, under the instructions and at the special instance and request of said defendant; that in pursuance of the provisions, conditions, and terms of said contract, on or about September 10, 1914, a formal lease was prepared by said Hill and signed by, and between said Lytle and said defendant, Brady, embodying substantially the terms of said contract, whereby the said Lytle agreed and bound himself to lease said theater and did lease the same for a period of 15 years at an annual rental of $18,000, payable monthly in advance at the rate of $1,500 per month, and said lease since said date and now is in full force and effect.'

"Plaintiffs further alleged that 'in addition to and irrespective of the solicitation, approval, acquiescence in, and acceptance of said services of plaintiffs as aforesaid, it is the usage and custom in transactions of the nature and character herein set out, to wit, in the rental, lease, or sale of real property, buildings, or otherwise by an agent or broker, that his commission or compensation therefor shall be paid by the owner of such property so rented, leased, or sold, unless by special agreement or understanding the same shall be paid by the lessee or vendee thereof, and plaintiffs specially allege that no such contract, agreement, or understanding was had in this instance by or with either said defendant or the said W. J. Lytle;' that by reason of said services so rendered by the plaintiffs the defendant became liable to pay the fair and usual commission and compensation for such services, and that the usual, reasonable, and customary fee is and was 2 per cent. of the amount due for the full period, namely, 2 per cent. of $270,000. Defendant's answer consisted of a general demurrer, special exceptions, and denials of the material allegations of the petition. The trial resulted in a verdict and judgment in favor of plaintiffs for $5,400, with interest thereon at the rate of 6 per cent. per annum. * * *

"In deference to the verdict of the jury, we find that Brady, knowing Hill to be an employé of Richey & Casey, who were engaged in the real estate and insurance business, expressly agreed to avail himself of Hill's services for the purpose of procuring a lessee for the theater portion of his building for 15 years; that the conversations between them were of such character as to reasonably charge Brady with notice that Hill expected compensation for his services; that no inquiry was made by Brady with regard to the amount of compensation he would be expected to pay, nor was any statement made by Hill in regard to compensation until after the preliminary contract was signed; that Hill prepared the preliminary contract, which was approved by Brady and Lytle, and a meeting was then had at which it was signed by them; that the preliminary contract provided for various things to be done by Brady in preparing the theater for use and fixed September 19, 1914, as the last day upon which a final contract should be executed; that the final contract was prepared by Brady, who on September 10, 1914, reminded Hill that the final contract must be signed and asked him to bring Lytle to Brady, and Hill did so, whereupon the final contract was signed. Hill testified that after the preliminary contract was signed he told Brady he presumed the latter was then ready to pay the commission; that Brady first said he supposed Lytle was going to pay the commission, to which Hill replied that it was always customary for the owner to pay the commission; that he gave Brady a letter he had procured from the Real Estate Exchange stating what the customary commission would be, but Brady did not have his glasses and said he would read it later; that in the next conversation Brady said he would talk to Hill about the commission in a few days; that in the third conversation Brady said he did not think the matter of commission ought to be taken up until after the lease was signed, as the first was just a preliminary contract, and Hill said that would be agreeable; that after the final lease

was signed he again broached the subject of commission, whereupon Brady complained of illness and asked Hill to see him at the end of the week; that he did so, and Brady put him off until the first of the next week, and at that time contended he ought not to pay a commission on the full 15-year lease because he did not know that the tenant would stay in the building; that they argued the matter for quite a while and Brady finally told him to come back in a few days; that finally Brady told him he thought it would be better to leave it to Richey & Casey to suggest the basis for estimating commission, and for Hill to tell them to see Brady; that he notified Richey & Casey and had no further conversations with Brady. Richey & Casey took up the matter with Brady, but no agreement was reached. Richey & Casey contended for 2 per cent. on the amount which would be paid in the 15 years if the lease was kept in force, while Brady contended that Lytle was not bound to carry out the lease, for there was a clause in the contract which permitted him to give it up by forfeiting $9,000.

"The final contract, in part, reads as follows: 'For and in consideration of $9,000, the receipt of which is hereby acknowledged, first party this day agrees to lease to second party the theater, now in course of construction, at the corner of St. Mary and College streets in this city for a term of 15 years beginning on the date that same is completed and ready for occupancy and ending on the corresponding day in the year 1929, 15 years thereafter. For the use thereof second party is to pay $1,500 per month or $18,000 per year, paying the same monthly in advance. As a guaranty for the carrying out of the provisions of the lease contract second party shall deposit with the first party $9,000, on which deposit first party will pay 6 per cent. interest per annum, paying the same semiannually as it accrues. Said $9,000 to apply as the rent for the last six months of the lease contract if not forfeited under the conditions therein specified. Should there at any time be any default in the payment of rent for five days from the date it is due or in any of covenants herein contained, then it shall be lawful for the first party to re-enter said premises and remove all persons therefrom without prejudice to any legal remedies which may be used for the collection of rent, all and every claim for damages for or by said re-entry being expressly waived, and should legal services be employed to collect any rents after default is made, then and thereupon 10 per cent. is hereby added to the rent or rents so defaulted for an attorney's fees. And in the event of such default the guaranty of $9,000 shall at once become the property of first party as liquidated damages in full settlement for breach of the lease contract.' The other portions are not deemed material in this suit. The preliminary contract contained the same language with reference to time of lease and the clause relating to default is almost a literal copy of a similar clause in the preliminary contract."

There was no evidence to support the plea of fraud contained in the third amended answer.

[1] The refusal of a peremptory instruction for appellant is complained of in the first assignment; the proposition being that there is no evidence that Mr. Brady either impliedly or expressly employed Richey & Casey or agreed to pay them the reasonable value of any services.

The witness R. C. Hill testified that he told Mr. Brady that he was with Richey & Casey and that he knew of a party to whom he believed he could rent Mr. Brady's theater, to which Mr. Brady replied: "If you know of a party who you think will rent it, go ahead and see what you can do with it." Mr. Brady testified that when Hr. Hill returned to him the third time and reported that Mr. Lytle, the person whom he believed would rent the theater, refused to pay $18,000 a year, but would pay $15,000, then Mr. Brady gave Hill the following instructions: "Go back and make certain arguments to Lytle to show him what a superior theater this was to any other in San Antonio and * * * show Lytle how much finer this theater was than any other in San Antonio." With this instruction Mr. Brady suggested illustrations and other arguments for Mr. Hill to use as inducements to persuade Mr. Lytle to rent the theater. Mr. Brady also told Hill: "Well, bring him (Lytle) up here and let me get a chance to talk to him." Mr. Hill, together with Mr. Brady, prepared a rental contract for Mr. Lytle to sign, which contract was subsequently signed. Mr. Brady further testified: "The first time I ever saw Mr. Hill he might have told me he was with Richey & Casey; * * * he might have told me when he came down there to talk to me about getting a tenant for this theater that he was with Richey & Casey." Again, Mr. Brady testified: "No, sir; I never at any time said to Mr. Hill that I was dealing with him as the representative of Mr. Lytle." "When he (Hill) came with Mr. Lytle he never said anything about whether he was working for me or Mr. Lytle. No, sir; Mr. Lytle never stated to me in Mr. Hill's presence that he was renting the building through Mr. Hill."

In deference to the verdict of the jury, we find that the above testimony establishes the fact that Mr. Brady employed Richey & Casey through their agent, R. C. Hill, to secure for Mr. Brady a renter for his theater. The first assignment is overruled.

[2] The second assignment presents the following proposition:

"The verdict of the jury is contrary to the law and the evidence in this:

"(1) There is no evidence showing an express agreement between plaintiffs and defendant, binding defendant to pay to plaintiff the reasonable value of services rendered or to be rendered by plaintiff to defendant under such contract.

"(2) There is no evidence of any implied contract binding defendant to pay plaintiffs the reasonable value of any service plaintiffs may have rendered to defendant.

"(3) There is no evidence that plaintiffs ever rendered any service to defendant.

"(4) The undisputed evidence shows that if any services were rendered to defendant they were rendered by one R. C. Hill individually, without any express agreement between the said R. C. Hill and defendant, or between plaintiffs and defendant, and that defendant in receiving the services of said Hill did not know, or have any reason to believe, that the services were being rendered for and on behalf of plaintiffs, and that plaintiffs expected to charge defendant for such services, and the undisputed evidence shows that Richey & Casey is a real estate firm in the city of San Antonio of experience and standing in the community, and that on the other hand R. C. Hill is a young man with limited experience, and that at the time of the al-

leged services was working on a salary not exceeding $125 per month.

"(5) The undisputed evidence shows that R. C. Hill, who is not a party to this suit, had at and before the filing of this suit, and has ever since had, an undivided one-third interest in the claim for commissions sued upon by Richey & Casey in this suit, and the verdict for the full amount of $5,400, is not justified nor sustained therefor by any testimony in the case."

The absence of evidence of an express contract to pay appellee the reasonable value of his services would not require the reversal of the judgment herein, for it is supported by the evidence of an implied agreement. Hall v. Southland Imm. Ass'n, 53 Tex. Civ. App. 592, 116 S. W. 831. The evidence is sufficient to justify the jury in finding that Mr. Hill was only the agent of Richey & Casey, and that Mr. Brady dealt with him as such and by an implied agreement engaged, through Mr. Hill, the services of Richey & Casey to secure a tenant for his theater. There were facts proven from which the law will presume that Mr. Brady expected and impliedly promised to pay Richey & Casey the reasonable value of the services promised and performed. The age and experience of Mr. Hill were immaterial to the issue of the reasonable value of the services rendered. The undisputed evidence shows that all of the claim for commissions belonged to the appellees, Richey & Casey. That they intended paying a portion of it, after collection, to Mr. Hill is not a matter that Mr. Brady can inquire into in this suit. San Antonio v. Reed, 192 S. W. 549; Cothran v. Marmaduke, 60 Tex. 370. The second assignment is overruled.

[3] The third and fourth assignments complain of the refusal of the trial court to permit appellants to propound a hypothetical question intended to elicit expert testimony as to the reasonable value of the services sued for herein. The court did not err in excluding the question, because the question included as elements to be considered in estimating the value of the services, the age, experience, and average monthly salary or earnings of appellees' representative. The age, experience, average monthly earnings of the representative of the brokers or real estate agents, Richey & Casey, are not facts to be considered in determining the reasonable value of the broker's commission for securing an accepted renter for Mr. Brady's theater.

"In determining the reasonable value of such services, the benefit to the defendant [Brady] labor performed, and time and money expended by plaintiff [Richey & Casey] should be considered." Bond v. Hancock, 163 S. W. 660; Hall v. Southland Imm. Ass'n, 53 Tex. Civ. App. 592, 116 S. W. 831.

"The amount of compensation to which a real estate broker is entitled in the absence of a contract or usage fixing the rate, is to be determined by the end accomplished, and the time taken in procuring the sale [lease] is not the only thing to be considered." Gracie v. Stevens, 56 App. Div. 203, 67 N. Y. Supp. 688.

The case last mentioned is cited as authority in the note in Ann. Cas. 1912A, 1267, and also in 4 R. C. L. § 67, note 8. Because the hypothetical question made the age, salary, and experience of the representative of Richey & Casey elements for determining the reasonable value of the services in securing the tenant for Mr. Brady, the court did not err in excluding the question. The third and fourth assignments are overruled.

The fifth assignment presents the following proposition:

"The court erred in refusing to give special charge No. 13, requested by defendant, as follows: 'You are instructed that in estimating the value of the services rendered, if any, you may take into account the evidence of the amount of work, the experience and capability for the particular work of the persons rendering the services, if any, and the value of the results produced.'"

It was not error to refuse the above-mentioned charge, for the charge was erroneous in that it authorized the jury to consider "the experience and capability for the particular work of the person rendering the services," none of which are proper elements to be considered by the jury in determining the value of the real estate broker's commission. Bond v. Hancock, 163 S. W. 660. The fifth assignment is overruled.

[4] It seems to us that one of the real substantive issues in the instant case is whether or not Mr. Brady realized that Richey & Casey, through their representative, R. C. Hill, were rendering services for him as his agents for which he was expected and bound to pay. Appellees alleged that they were employed by Mr. Brady to act as his agents for securing a tenant for his theater. Appellant denied this and alleged that he dealt with appellees, through their representative Mr. Hill, as the agent of Mr. Lytle and did not recognize them as his agents. The undisputed evidence is that Richey & Casey were not, in fact, the agents of Mr. Lytle, the renter.

There is evidence which seems to us sufficient to sustain the verdict that appellees were in fact acting as the agents of Mr. Brady, and that Mr. Brady did know, or ought to have known, this at the time he accepted the service and the benefit of that service. There is, however, very persuasive testimony that Mr. Brady did not realize that appellees were representing him, but dealt with them as the agents of Mr. Lytle, the renter, and that it never occurred to him when dealing through them that he was incurring any obligation to pay for the services. The testimony upon the issue above stated does not seem to us to show a preponderance in favor of the appellees; but the jury found that it does, and, as there is evidence to sustain the verdict, we are bound by it. The issue, with slight variations, appellant endeavored to have affirmatively submitted as a defense in his behalf and from his standpoint, by requesting the submission of the fourth, sixth, seventh, eighth, and ninth special charges, all of which were refused. Undoubtedly appellant had the right

to require the trial court to submit to the jury affirmatively the group of facts constituting the above-mentioned issue upon which his defense was founded. M., K. & T. Ry. v. McGlomory, 89 Tex. 635, 35 S. W. 1058; Wichita Falls Traction Co. v. Adams, 183 S. W. 155. A careful examination of the fourth paragraph of the general charge given by the trial court convinces us that the issue above set out was fully and affirmatively submitted to the jury from appellant's point of view. We therefore overrule the sixth, seventh, eighth, ninth, and tenth assignments, which present as error the refusal of various special charges submitting the defensive issue of appellant herein discussed.

[5] The eleventh assignment complains of the admission, over objection, of the following testimony:

"When a real estate agent negotiates to obtain a tenant for the owner of a building, does the owner pass on the responsibility of the tenant?

. "The owner passes on the responsibility."

The question calls for, and the answer is, a conclusion of law, which is not made an issue in this suit. However, as the undisputed evidence shows that the tenant was accepted by Mr. Brady, and as he was perfectly satisfied with the rent contract and the tenant, we cannot say the error is sufficient to justify a reversal of the judgment. Rule 62a [149 S. W. x]; Brady v. Richey & Casey, 187 S. W. 512. The eleventh assignment is overruled.

The twelfth assignment presents no error. Mr. Brady's liability did not depend upon his own manifestations by word or act. The facts constituting his liability were found by the jury upon a correct general charge. The twelfth assignment is overruled.

[6] The thirteenth assignment complains that the verdict is excessive, in view of the clause in the rental contract which provides that if the contract is breached by Lytle at any time a deposit of $9,000 made by Mr. Lytle with Mr. Brady will be forfeited and will be paid in full settlement of any damages growing out of said breach. The lease obligated Mr. Lytle to pay $1,500 a month or $18,000 a year for 15 years, a total of $270,000. The verdict was for $5,400, which was 2 per cent. of the $270,000. The court in the fifth paragraph of its general charge instructed the jury that the lease contract may run for 15 years, but that the lessee, W. J. Lytle, may cancel the contract of lease at any time upon forfeiting to the lessor, Brady, the sum of $9,000, and charged the jury that it could take into consideration the terms of the lease in fixing the value, if any, of the services rendered. Without any testimony by experts of the reasonable value of the services, the jury was authorized to determine that value. Hall v. Southland Imm. Ass'n, 53 Tex. Civ. App. 592, 116 S. W. 831. The record reveals an abundance of testimony from expert witnesses that the reasonable value of the services rendered was $5,400. Mr. Brady himself testified that the services were worth $13,500 if the $18,000 should be paid according to the lease for the 15 years. We cannot say that the evidence fails to sustain the full amount found by the jury. We overrule the thirteenth assignment.

The above discussion also disposes of the fourteenth assignment, which is overruled.

[7] The basis of the fifteenth assignment is the following objection to the second paragraph of the trial court's general charge:

"Defendant objects to the second paragraph of said charge because it requires the jury to find a verdict for the plaintiffs without requiring them to find that the services therein described were rendered with and accepted with the expectation that defendant should pay for same, or were rendered in connection with such acts and circumstances that a reasonable man would infer therefrom that defendant should pay for same."

The paragraph of the general charge criticized is:

"(2) You are further instructed that if you believe from the evidence that R. C. Hill was the regularly constituted agent of the plaintiffs, Richey & Casey, and that same was known to the defendant, Thomas F. Brady, at all times during the negotiations testified about, and if you further believe from the evidence that said defendant, Brady, by words, acts or conduct, if any, authorized said Hill to act for him, and the said Brady, in procuring W. J. Lytle as a tenant for his theater, if you find that he did, and if you further believe from the evidence that through the acts and negotiations of said Hill, said Lytle executed said contract of lease introduced in evidence, then you are instructed that your verdict must be for the plaintiff."

The law implied a promise to pay for such services rendered under the circumstances pleaded and proven in this case. As stated by Mr. Justice Moursund in disposing of the former appeal of this case:

"Plaintiffs alleged an express agreement that the services should be rendered, by stating that defendant directly solicited their services to make the lease, and alleged an implied agreement, by stating facts showing a conscious appropriation by defendant of their labors. In either case, the compensation not being agreed upon, the law implies a promise to pay a reasonable amount."

The second paragraph of the general charge was not incorrect. The fourth paragraph of the charge instructed the jury upon the same issue, but affirmatively for the appellant, and embraces all that appellant was entitled to under the pleading, proof, and law. The fourth paragraph is not in conflict with the second paragraph. The principle announced in the case of M., K. & T. Ry. v. Mills, 65 S. W. 75, is that a charge which makes an incorrect statement of the law in one paragraph is not cured by a correct statement of the law in a subsequent paragraph of the same charge. The vice is that the two paragraphs in such a charge are conflicting and therefore confusing. The general charge in the present case contains no contradictory statements of the law. The fifteenth assignment is overruled.

The three objections to the first paragraph of the general charge, the overruling of which is urged as error in the sixteenth assignment, are without merit because, contrary to the first criticism, there was evidence to justify the said paragraph; the second criticism has been discussed and answered in our discussion of the fifteenth assignment, and the third criticism is untenable for the reasons given by us in our discussion of the fifth paragraph of the second assignment. The sixteenth assignment is overruled.

The seventeenth assignment urges that the fourth paragraph of the general charge was error because there was no evidence to authorize it, and that the court therein did not limit the jury in its deliberations to the acts and circumstances known to appellant. We think there was evidence requiring the charge objected to. The second criticism is without merit. We overrule the seventeenth assignment.

[8] Considering the eighteenth assignment. Because there is no evidence that R. C. Hill was the agent of W. J. Lytle in the negotiations for the lease of Mr. Brady's theater, the special charge No. 3 was properly refused. There was evidence that Mr. Brady thought Mr. Hill was the representative of Mr. Lytle, and dealt with him as the agent of Mr. Lytle. To this Mr. Brady clearly testified. This issue was submitted, and determined against appellant. But no one testified that Mr. Hill was in fact the agent of Mr. Lytle. The eighteenth assignment is overruled.

[9] The nineteenth assignment contends that the court erred when it refused the following special charge:

"You are charged that the contract introduced in evidence dated in July, 1914, is an agreement between Brady and Lytle, that a lease contract between the two for the Empire Theater will be thereafter entered into, and if you believe from the evidence that after the execution of that instrument R. C. Hill entered into the employ of the defendant Brady at a salary to manage and rent the Brady Building, then in no event would plaintiffs be entitled to recover of defendant, Brady, for any services rendered by said R. C. Hill to said Brady thereafter rendered in securing final contract of lease between said Brady and Lytle of the Empire Theater."

The refusal of this was not error, because Mr. Brady owed no commission to R. C. Hill; the commission was payable to Richey & Casey. That Mr. Brady employed Hill after the preliminary contract for the lease was signed by Mr. Brady and Mr. Lytle could not release Mr. Brady from his obligation to pay Richey & Casey the commission. Ross v. Moskowitz, 95 S. W. 87; Martin v. Jeffries, 172 S. W. 151. The nineteenth assignment is overruled.

[10] The alleged errors presented in the twentieth, twenty-first, twenty-second, twenty-third, and twenty-fourth assignments all concern the contention, viz.: That because the evidence developed that R. C. Hill would receive from Richey & Casey, as a part of his compensation, one-third of any amount the latter recovered from Mr. Brady, therefore Hill was a joint owner of the claim, and should have joined in the suit as a party or, if not, that Richey & Casey's recovery should have been limited to two-thirds of the entire claim. If Mr. Hill was an equal partner of Richey & Casey, or if he was an owner of one-third of the claim against Mr. Brady, the rule of law announced in the authorities cited by appellant would have applied to the facts of the case here reviewed; but the facts do not bring this case within the doctrine relied upon. The undisputed evidence shows that Hill was only a clerk or agent of the firm of Richey & Casey. As such agent, he was not the owner of any part of the commission due on the Brady-Lytle transaction. All the commission was owned in equal parts by Richey & Casey. The relationship of principal and agent between the firm of Richey & Casey and R. C. Hill being unequivocally established, it follows that the agent, Mr. Hill, had no such ownership in the claim against Mr. Brady as would permit Hill to be joined in the suit. There was no privity of contract between Mr. Hill and Mr. Brady. The authorities cited by appellee announce the rule applicable to the facts of the present case. Cothran v. Marmaduke, 60 Tex. 370; Stevens v. Gainesville Nat. Bank, 62 Tex. 499; Grabenheimer v. Rindskoff, 64 Tex. 49; Brackenridge v. Claridge, 42 S. W. 1005; Texas & Pac. Ry. v. Smissen, 31 Tex. Civ. App. 549, 73 S. W. 42; McBrayer v. Smith, 145 S. W. 1053; Mo. Pac. Ry. v. Johnson (Sup.) 7 S. W. 838; Brady v. Richey & Casey, 187 S. W. 508; City of San Antonio v. Reed, 192 S. W. 549–553. The twentieth, twenty-first, twenty-second, twenty-third, and twenty-fourth assignments are overruled.

The judgment is affirmed.