## CHRISTIAN v. DUNAVENT. (No. 1816.)

(Court of Civil Appeals of Texas. Amarillo. May 18, 1921. Rehearing Denied June 22, 1921.)

1. **Partnership ⊚⟞11—Real estate broker and assistant employed by him, not having anything to do with losses, held not partners.**

Where a broker employed an assistant, who was to get half of commissions realized from sales of land made to customers from the section of the country from which the assistant came, *held*, that there was no partnership, but merely the relation of principal and agent; the assistant not having anything to do with losses.

2. **Brokers ⊚⟞40, 81—Entitled to recover for sales of land listed with agent, not known to be such by owner and broker's agent, need not be made party to suit for commission.**

A broker could recover a commission for the sale of land listed with his agent, though the owner did not know that the person with whom he was listing the land was the agent of the broker, and the broker's agent was neither a necessary nor proper party to a suit to recover a commission.

3. **Brokers ⊚⟞82(4)—Allegation that land was listed with broker sustained by proof that listing was with agent.**

An allegation, in an action by a broker for commissions for obtaining a purchaser for land, that the land was listed with plaintiff and the purchaser procured by him and his agent, was sustained by proof that the land was listed with a third person, who was an agent of plaintiff unknown to the defendant, and that the agent performed the services.

4. **Brokers ⊚⟞66—Agreement to divide commissions with purchaser or another broker does not affect right to commission.**

An agreement by a broker to divide his commissions with the purchaser of real estate does not affect his right to recover; though the principal does not know it, nor will his agreement to divide with another broker, who is not connected with the other side.

5. **Assignments ⊚⟞23—Broker may assign claims for commission.**

A broker, even pending a suit to recover commissions, may assign his claim to another, either in whole or in part.

6. **Brokers ⊚⟞18—General rule against delegation of performance of duties without principal's consent held not to apply to case of land listed with broker's undisclosed agent performing services.**

The general rule that an agent, employed to perform the duties of an agency involving an element of personal trust, confidence, or skill, cannot delegate the performance of his duties to another without the consent of the principal, has no application in an action by a broker to recover commissions for sale of land listed with the broker's agent, who was not known to be such, where the agent performed the services.

7. **Brokers ⊚⟞82(2)—Fraud must be specifically alleged.**

Fraud must be specifically alleged, and if defendant, in action by broker to recover commissions for sales of land, wished to set up the defense that he did not want plaintiff to have any of the commissions for sale of the land, and that an agent of plaintiff, with whom the land was listed, whom he did not know to be an agent, made the fraudulent statement that he was not connected with plaintiff in any way, and plaintiff would receive none of the commissions, he must specifically allege such fraud.

8. **Trial ⊚⟞255(12)—Defense of fraud held matter to be submitted at defendant's request.**

In action by broker to recover commissions for sale of land listed with agent of plaintiff, not known to be such by landowner, if defendant did not want plaintiff to have any of the commissions, or anything to do with it, that was a matter of defense, to be submitted at defendant's request, even if it be conceded that the fact was provable under the general issue; defendant claiming that the agent with whom he listed the property fraudulently stated that plaintiff was not interested and would obtain none of the commissions.

9. **Trial ⊚⟞351(2)—Requested charge held a sufficient request for special issue.**

In action by broker to recover commission for sale of land listed with plaintiff's agent, court erred in submitting special issue, "Did defendant, D., have his land listed with the plaintiff?" and in refusing to further instruct that, if the person with whom the land was listed was acting as agent of plaintiff, then the listing would inure to the benefit of the plaintiff and would be a listing with him, and plaintiff need not go further and request that the court inquire of the jury whether such person was the agent of plaintiff, and whether the property was listed with such agent, under Vernon's Sayles' Ann. Civ. St. 1914, arts. 1970–1972, 1985, since the charge was sufficient to call attention to matter omitted from special issue.

10. **Trial ⊚⟞351(2)—Not necessary for plaintiff to require submission of special issues as to matters of defense.**

It is not necessary for plaintiff to require the submission of special issues as to matters of defense, in order to escape the presumption of an adverse finding on such issues in support of a judgment for the defendant, under Vernon's Sayles' Ann. Civ. St. 1914, arts. 1970–1972, 1985.

Boyce, J., dissenting.

Appeal from District Court, Floyd County; R. C. Joiner, Judge.

---

⊚⟞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Suit by T. A. Christian against J. S. Dunavent. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

Kinder, Russell & Griffin, of Plainview, for appellant.

Kenneth Bain and A. P. McKinnon, both of Floydada, for appellee.

HALL, J. Appellant sued appellee to recover commissions alleged to be due him as a broker upon the sale of certain real estate. He alleges: That appellee listed the land with him at a price of $60 per acre, for the sale of which he was to receive his customary commissions of 5 per cent. That appellant had working under him in said business one J. R. Glenn, under an agreement by which the said Glenn was to receive a division of such commissions as were received upon all sales made to parties from a certain section of the state. That appellant and Glenn found W. D. Lee as a purchaser for said land, and in order to effect a sale appellant agreed, with appellee to accept $1,000 in full of his commissions in the event a sale was made. That thereafter appellee made and entered into a contract with the said Lee, wherein the latter agreed to buy the land at a price and on terms satisfactory to defendant, and that said Lee was ready, willing, and able to comply with his said contract. Appellee answered by general denial.

The court submitted special issue No. 1, as follows:

"On the date that plaintiff, Christian, took the witness W. D. Lee to show him the premises of defendant, did defendant, Dunavent, have his land listed with the plaintiff? If you answer this question in the negative, then you need not answer any other question; but, if you answer it in the affirmative, then you will answer the following."

The appellant excepted to this part of the court's charge upon the ground that the undisputed testimony showed that Glenn was not in the real estate business, except as he was employed by plaintiff, and, being plaintiff's agent, a listing with him would be a listing with plaintiff, even if the jury should not believe that it was listed with plaintiff as testified by him. The appellant requested the following special charge:

"Gentlemen of the jury: In connection with the first issue, I charge you that, if the witness Glenn was acting as agent of plaintiff, when defendant listed his land with said witness, then the listing would inure to the benefit of the plaintiff, and would be a listing with him."

The court overruled the exceptions to the charge and refused to give the requested special charge. The jury answered the special issue in the negative, and judgment was entered that plaintiff take nothing by his suit. The court's action in refusing the spe-cial charge is made the basis of the three assignments of error.

Christian testified upon this point as follows:

"Mr. Glenn and I have had business relations. I employed him to represent me, or rather to help me. At that time he was engaged in the farming business. The arrangements between Mr. Glenn and myself were these: Mr. Glenn was from Lemar county, which was his home before he came to Floyd county, and he knew lots of people there in Lamar county. There were lots of Lamar county people coming here to Floyd county to buy land. I employed Mr. Glenn to help me. A good many of those Lamar county people went to Mr. Glenn's house. As soon as they came to town, he was to carry them out to his house, and was to take care of them, and I was to furnish the car and the expenses, and we were to go halves. He worked for me under these conditions; that was with reference to people from Lamar county. He was acquainted with Mr. Lee before Mr. Lee came out here to Floyd county. I had negotiations with Mr. Lee with regard to the sale of this particular tract of land in question in this suit. I was acquainted with Mr. Lee at that time and showed him over the farm. Mr. Glenn and I together went in my car with another gentleman, whose name I have forgotten, and who came out with Mr. Lee. We walked over the place; went over it carefully, the larger part of it. After looking over the place, and coming back to Mr. Dunavent's house, Mr. Lee said, if the cash payment was not too much, he would give him around $28,000 for the farm. We then got in the car and drove down in the field. Mr. Dunavent was picking cotton there north of his place, I think on Mr. Massie's land. We drove out there where he was. Mr. Glenn and Mr. Lee got out of the car and went out where Mr. Dunavent was picking cotton; they sat down and talked the matter over. The other man and I stayed in the car. I saw Mr. Dunavent the next morning at Floydada here in town; met him down near the First State Bank, and had some conversation with him at that time, in which I told him that our man was ready and we wanted to get the deeds put up. He said that he would be up to the bank; he had something to say about what he was going to do—I have forgotten what it was, something he had to attend to—but that he would be up at the bank right away, so I said that I would walk around. * * * Mr. Glenn was getting half the commissions on deals or sales to Lamar county people he knew. I had no arrangements with him for paying him for his services, other than commissions on deals made to Lamar county people. He was not employed by me on a salary, or anything of that kind; he did not keep office for me. We just worked together and divided."

Glenn testified:

"My arrangement with Mr. Christian and our dealing in the real estate business was this: I knew a good many people in the county where I came from, and there were a good many of them coming here, and Mr. Christian made the proposition that he would furnish everything and give me half of what we sold to people from Lamar county. I was not at that

time engaged in the real estate business in any other way."

[1–10] We think the court erred in refusing the requested special charge. The testimony quoted above does not show that Glenn and Christian were partners. Glenn was not interested in the brokerage business being conducted by Christian in a general way; his only interest being in whatever commissions were realized from the sales of lands to customers from Lamar county. By his agreement with Christian he was not clothed with the usual powers, rights, or duties of a partner. It was not shown that he had anything to do with losses. The evidence tends strongly to show that he was clothed by Christian with special authority to act only in relation to sales to be made to Lamar county purchasers. 30 Cyc. 376: 20 R. C. L. p. 834, § 39. If he acted as the agent of Christian, the latter would be entitled to recover, even though Dunavent did not know that Glenn was his agent. Under such circumstances Glenn is neither a necessary nor a proper party to the suit. Pittman & Harrison Co. v. Boatenhamer et al., 210 S. W. 972; Brady v. Richey & Casey, 202 S. W. 170. The agreement between Christian and Glenn made the former the principal and the latter his agent, and though Glenn concealed this fact from Dunavent, the undisclosed principal may recover upon any contract made by his agent for his benefit, unless it is alleged and proven that the business arrangement between them operated to the detriment of the defendant in some manner. The allegations that Dunavent listed the land with Christian, and that Christian and Glenn procured a purchaser, are sustained by proof that the listing was with Glenn, the agent of Christian, and that Glenn is the party who actually performed the services. Ucovich v. Bank, 138 S. W. 1102.

The special issue given without the requested special charge did not submit the case as made by the pleadings and evidence. It has been frequently held that an agreement by a broker to divide his commissions with the purchaser does not affect his right to recover, though the principal does not know it; nor will his agreement to divide with another broker who is not connected with the other side. Chase v. Veal, 83 Tex. 333, 18 S. W. 597; 4 R. C. L. p. 327, § 63. If Glenn could divide his commission with the purchaser, why could he not divide it with Christian, or even a third party? As was said in the Veal Case, supra:

"We are unable to see how Chase was injuriously affected by that agreement."

It was shown in Anderson v. Crow, 151 S. W. 1080, that Anderson had listed his land with one Lee for sale and that Lee procured Crow to assist him in selling it. The court said:

"As heretofore stated, the testimony discloses an agency contract between Lee and Anderson, by which Anderson was to pay him a commission of $1 per acre for effecting the sale. There is no privity of contract whatever between Crow and Anderson; Crow's right to commission being by virtue of his agreement with Lee. Lee, by instrument in writing, transferred and assigned to Crow all of his right, title, and interest in his claim for commission against Anderson, and was amply sufficient to transfer to Crow and support a recovery by him of the entire commission."

So in this case there is no privity of contract between Dunavent and Christian; but, if by the agreement between Christian and Glenn the former is entitled, although as Glenn's undisclosed principal, to any of the commissions, he can recover. 2 Mechem on Agency, § 2059. If no business arrangement existed prior to performance by Glenn, and he had sued Dunavent, it is clear that he could, even pending his suit to recover, assign his claim to Christian, either in whole or in part. If so, why could not such interest be assigned beforehand?

The general rule is that an agent employed to perform the duties of an agency, involving an element of personal trust, confidence, or skill, cannot delegate the performance of his duties to another without the consent of the principal; but the rule has, under the record before us, no application to this case. Glenn was the agent employed by Dunavent, and according to his testimony is the person who performed the services. He showed Lee the premises, brought the parties together, and wrote the contract of sale. If he has, under the law, earned the commissions, he could, as to Dunavent, recover in his own name, or by prior or subsequent agreement vest that right in Christian, subject to the rule that a suit by an undisclosed principal is generally subject to all defenses which the defendant could have urged against the agent. Nothing, however, in the way of such a defense, has been set up by Dunavent in this case. He pleads only the general issue. If it be admitted that Glenn falsely stated that Christian had no connection with the transaction and no interest in it, and further that injury resulted to him by reason thereof, and that such statement amounted to fraud, which would defeat Glenn's right to recover compensation, any evidence thereof would be inadmissible, unless the facts were specially pleaded. Fraud is never presumed, but must be specifically alleged. 9 C. J. p. 643, § 115. This court held, in Bobbitt v. Bobbitt, 223 S. W. 478, that when the wife alleged that certain property was acquired during coverture, proof of that fact was all that was necessary to make out her prima facie case upon that issue, and that if the husband wanted the further fact that it was acquired while they were residing in a state,

under the laws of which it would not be community property, the duty rested upon him to request the submission of that issue to the jury. So, in this case, when Christian alleged that the land was listed with him and proved that the listing was with his employee or agent, Glenn, and that the service had been rendered, he established prima facie his right to recover.

Issue No. 1 did not submit fully and fairly the case made by Christian under the record. He denied that the contract with Glenn excluded him as a party to it and he was required, in requesting issues and charges, to present only his theory of the case, and the court's refusal is therefore error. Ellerd v. Newcom, 203 S. W. 408. If Dunavent's statement is true that he told Glenn he did not want Christian to have any of the commissions or anything to do with it, that was a matter of defense to be submitted at his request, even if it be conceded that the fact was provable under the general issue. Beaumont Traction Co. v. Happ, 57 Tex. Civ. App. 427, 122 S. W. 610 (writ of error denied). The uncontroverted evidence is that Dunavent did not list the land with Christian personally. While under the law, if Glenn was the agent of Christian, a listing with Glenn would be a listing with Christian, and for this reason the issue, without the requested charge, did not fairly present the case from appellant's side made by the pleadings and evidence, and in all probability resulted in the negative answer made by the jury to the issue. The appellant might have requested that the court inquire of the jury whether Glenn was the agent of Christian and whether Dunavent listed the property with Glenn, but he was not required to adopt that course. The giving of the charge would have amounted to the same thing and such procedure has been expressly approved in Texarkana & F. S. Ry. Co. v. Casey, 172 S. W. 729, J. M. Guffey Petroleum Co. v. Dinwiddie, 182 S. W. 444, and Western Union Telegraph Co. v. Goodson, 217 S. W. 183. The charge was sufficient to call to the attention of the court the defect in the issue submitted. In Foster v. Atlir (Com. App.) 215 S. W. 955, the Supreme Court held that an issue incorporated in objections to the court's charge was a sufficient request to submit the omitted issue. If appellant's special charge was incorrect, which we do not concede, it was sufficient to require the court to properly present the issue submitting appellant's theory of the case. Olds Motor Works v. Churchill, 175 S. W. 785; Roberts v. Houston Motor Car Co., 188 S. W. 257; Brady v. McCuistion, 210 S. W 815. If the special charge requested had been given, and the jury had found that the land was listed with appellant, then it could not be presumed in support of the judgment that the court found that Dunavent had expressly excluded ap-

pellant by his contract of agency with Glenn, because Glenn contradicted Dunavent upon that point, and it is clear from all the evidence that Dunavent did not base his refusal to consummate the deal upon the fact that Christian was interested in it, and because the rule is that it is not necessary for plaintiff to require the submission of special issues as to matters of defense in order to escape the presumption of an adverse finding on such issue in support of a judgment for the defendant. Turner v. M., K. & T. Ry. Co., 177 S. W. 204 (14). We think appellant has done all required of him under articles 1970–1972 and 1985, V. S. C. S.

Reversed and remanded.

BOYCE, J. (dissenting). I cannot agree that the instruction requested by appellant should have been given, as held by the majority opinion. In order that my views may be understood, I make this further statement of the case:

Plaintiff alleged in general terms that, some time prior to the alleged dealings with the proposed purchaser, Lee, the defendant, had listed the property "with plaintiff for sale." There was no allegation that this contract was made between defendant and Glenn, acting for plaintiff. The defendant answered by a general denial. The plaintiff testified that the defendant did list the land with him personally several months or a year before the transaction in question, and the enlistment had never been withdrawn, but, on the contrary, recognized by personal conversations as continuing up to the time of the procurement of the alleged purchaser Lee. Defendant, Dunavent, testified that he did, at one time, list the land with plaintiff, but that the enlistment was expressly withdrawn, and had never been renewed. This evidence, of course, presented an issue of fact for the jury. In addition to this showing of a contract, the plaintiff offered the testimony of the witness Glenn, who testified that on the day before Lee was taken to look at the land the defendant, Dunavent, listed the land with him (Glenn) for sale; it being admitted that nothing was said about Glenn being the agent of Christian, and it not being claimed that Dunavent knew that he was Christian's agent. Dunavent testified, and I do not understand that this is denied by Glenn, that Glenn and Lee came out to his place in an automobile on the occasion when negotiations for the sale of the land were begun; that there were two other men in the car; that only Glenn and Lee got out and came to see him; that he saw that Christian was one of the men in the car and inquired of Glenn whether Christian had anything to do with it, stating that he had reasons for not wanting Christian to have anything to do with the deal, and would object to him getting any commis-

sions out of the sale of his land; that Glenn replied that "Mr. Christian has not got anything in the world to do with it; it is my deal; my car is broke down, and I hired Mr. Christian to bring me down here"; that on this assurance he proceeded with the negotiations. Christian testified that he afterwards discussed the trade with Dunavent, though this is denied by Dunavent, who testified that Christian never said anything to him about the trade at all.

The question is: Should the court have instructed the jury, under these circumstances, "that if the witness Glenn was acting as agent of plaintiff when defendant listed his land with said witness, then the listing would inure to the benefit of the plaintiff, and would be a listing with him." It was essential to a recovery by the plaintiff that he allege and prove a contract between him and the defendant. If Dunavent's testimony is true, did Christian have a contract with the defendant, as the undisclosed principal, through the listing with Glenn? I take it that the relation between the owner and the broker involves an element of personal confidence and trust (9 C. J. p. 519), and that at least so long as the contract remains executory an undisclosed principal broker could not insist on performance of a contract made with his agent in the name of the agent, and without knowledge on the owner's part of the agency (Mechem on Agency [2d. Ed.] § 2067). But the author asserts in this connection that if the agent, in whose name the contract was made, and in whom the other contracting party placed the confidence and trust, himself performs the services, then "no objection could be made against permitting the real principal to require the other party to render performance to him," provided the contract does not expressly exclude any other principal. And it is shown, in a succeeding paragraph of the same work (section 2070), that the "principal cannot sue where the terms of the contract exclude him or where the contract is solely with the agent personally." This general proposition last stated is sustained by the authorities cited, among which are Winchester v. Howard, 97 Mass. 303, 93 Am. Dec. 93; Boston Ice Co. v. Potter, 123 Mass. 28, 25 Am. Rep. 9; Cowan v. Curran, 216 Ill., 598, 75 N. E. 322.

I think the testimony of the defendant, Dunavent, if true, brings the case within this rule. He had withdrawn the enlistment from Christian; he listed it with Glenn personally, and before performance expressly informed the said Glenn that he did not want Christian to have anything to do with it, and was assured that Christian did not have a "thing on earth to do with it." This is equivalent to an agreement of express exclusion. Whatever defendant's motive may have been,

he had the right to provide against putting Christian in a position to meddle in his affairs, and to refuse to have any contractual relations with him. It does not appear that the negotiations were conducted wholly by Glenn on his own judgment. Christian, while not present at the conference between the purchaser, the defendant, and Glenn, was in position to be in communication with Glenn and the purchaser during the conduct of such negotiations; and while Glenn may have been doing the acting on the stage, the defendant had the right to stipulate against having Christian as a director behind the scenes. If the facts testified to by Dunavent are true, it ought not to be held that the contract with Glenn was Christian's contract. The requested charge was in effect a peremptory charge against the defendant as to such matter, on which he at least had the right, in my opinion, to go to the jury, and it would have been error for the court to have given it.

As to the question of pleading, if the plaintiff under general allegation of the making of a contract between plaintiff and defendant, could introduce evidence to show that he was the undisclosed principal in a personal contract made between a third party and the defendant, I think the defendant, under a general denial, would be permitted to show all facts as to such contract as tended to show that it was not really a contract between the plaintiff and the defendant.