C. W. HAHL & COMPANY v. SOUTHLAND IMMIGRATION ASSOCIATION.

Decided February 9, 1909.

**1.—Verdict—Special Issues—Judgment—Presumption.**

When a case is submitted upon special issues, such facts as are necessary to support the judgment, although not embraced in the special issues submitted nor the verdict rendered thereon, will be presumed to have been found by the trial court, if warranted by the evidence.

**2.—Pleading—Express Contract—Quantum Meruit.**

In an action for a share of profits derived from a sale of land wherein plaintiffs allege an express contract with defendants to share the profits but also set out all of the facts attending the transaction, and prayed in the alternative for the value of their services rendered in effecting a sale, pleading and evidence considered, and held that plaintiffs were entitled to recover on their alternative prayer although the jury found that an express contract to share the profits existed between the parties.

**3.—Contract—Breach—Liability.**

Plaintiffs and defendants were engaged as separate firms in the sale of lands; they entered into an agreement to mutually assist each other in effecting sales and to share the profits; defendants found a tentative purchaser for a tract of land for which plaintiffs were agents and, with the assistance of plaintiffs, effected a sale, but pending the negotiations defendants bought the land directly from the owner, intending to convey the land themselves to

the purchaser and thus defeat plaintiffs' claim to a part of the profits. Held, the fact that plaintiffs tried to prevent the owner from conveying the land to the defendants would not affect their right to compensation from the defendants for the value of the services rendered in effecting a sale to the purchaser.

**4.—Quantum Meruit—Verdict without Evidence.**

Where, in an action for the value of services rendered, all the details of the transaction are proved, and the nature of the transaction and of the services rendered are such that the jury could, from their own knowledge, form an intelligent judgment of the value of the services, the fact that there was no evidence introduced as to the value of the services would not be sufficient cause for setting aside a verdict in plaintiff's favor.

**5.—Same—Sale of Land—Evidence.**

Under an assignment that a verdict was excessive in awarding compensation for services rendered in effecting a sale of land, evidence considered, and held sufficient to support the verdict.

**6.—Evidence—Copy of Deed, Competent when.**

Upon an issue as to the number of acres sold and the prices obtained, certified copies of the deeds are competent evidence when offered in connection with the testimony of the grantor that the sales were made as therein recited.

**7.—Contract—Breach—Profits—Fraud—Expenses.**

In an action by one party to a contract against the other for a share of the profits made thereunder, the defrauding party cannot deduct from the gross profits the expenses incurred by him in trying to defraud the other party.

Appeal from the District Court of Harris County. Tried below before Hon. Norman G. Kittrell.

*L. B. Moody,* for appellants.

*Hutcheson, Campbell & Hutcheson,* for appellees.

REESE, ASSOCIATE JUSTICE.—This suit was instituted in the District Court of Harris County by E. M. Paulson, B. B. Haugan and William Olander, partners doing business under the name of the Southland Immigration Association, against C. W. Hahl and F. A. Connable, partners composing the firm of C. W. Hahl & Co. The purpose of the suit was to recover commissions or a division of profits arising out of a certain real estate deal, in which it is alleged the parties were jointly engaged under a contract for division of such profits, or for the reasonable value of the services of plaintiffs in assisting in the consummation of such deal. The case was tried with a jury upon special issues. Upon return of the special verdict the court rendered judgment in favor of plaintiffs for $17,500 as the reasonable value of their services in the matter. From this judgment, their motion for a new trial having been overruled, defendants appeal.

The allegations of the petition are, in substance, as follows: Sometime in the month of July, 1905, plaintiffs entered into a contract with the defendants with regard to cooperation in their mutual business. Inasmuch as the jury found that the contract set out in paragraph III of plaintiff's petition was made by the parties, the same is here set out in full as there stated.

Vol. LIII Civil—38.

"Plaintiffs aver that on or about the . . . day of July, 1905, they entered into a contract and agreement with the defendants, C. W. Hahl & Company, by the terms of which it was mutually agreed that they would conduct their respective land business in conjunction with each other, that is, it was agreed that plaintiffs' firm should list for sale on commission all lands they could in West and Southwest Texas, and defendants' firm should list all the lands they could for sale on commission in the vicinity of Harris County and in adjoining counties in the State of Texas, and each should give to the other from time to time a complete list and account of all lands so listed, together with the location, price, and on what terms the same could be sold, and the name of the owner or owners; in fact it was agreed that all the information within their possession concerning such lands should be given to the other; and it was further agreed that each should use their best endeavor to assist the other in making sales of all such lands so listed, and said contract and agreement further provided that if plaintiffs found a purchaser for any portion of the land listed by defendants, or if the defendants should find a purchaser for any portion of such lands listed by plaintiffs, there should be an equal division made of all commissions or profits arising from such sale, plaintiffs to take one-half and the defendants the other."

In pursuance of this agreement plaintiffs, through William Olander, listed with defendants sundry tracts of land, among them a tract of 10,900 acres in Bee County, known as the Nutt Ranch, which plaintiffs were authorized to sell at $7.50 per acre net to the owner, plaintiffs to have the excess as commissions. Shortly after the Nutt Ranch had been listed plaintiffs reported the same to defendants, giving them a full description of the land, prices, terms, etc.

Shortly afterwards defendants secured a purchaser in the person of one W. J. Candlish, who was brought to Beeville by Connable, and Olander (one of plaintiffs) assisted Connable in showing the land and in making sale to Candlish, relying upon the agreement aforesaid as to division of profits.

The defendants took advantage of this information and assistance of Olander, and on or about August 10, 1905, contracted to sell the land to Candlish as their own, and about March 10, 1906, Candlish took possession. The exact terms of this contract of sale with Candlish plaintiffs aver they are unable to give, but they aver that a sale of all the land was made to Candlish on a basis of $12.50 per acre, and that about $25,000 of this had been paid in cash. It is further alleged that after defendants had sold the land to Candlish they set about to cheat, swindle and defraud plaintiffs of their interest in the profits arising from said sale, and, to accomplish this purpose, took a contract of sale of the land from R. E. Nutt, the owner, to themselves, and afterwards, on December 20, 1905, got a deed from Nutt to themselves at $7.50 per acre, having, however, previously contracted to sell the land to Candlish at $12.50 per acre, and delivered possession to him. Afterwards, about April, 1906, Candlish released 3,942 acres of the land to defendants and retained 6,958 acres. Defendants have never actually executed a deed to Candlish for any of said land, except as to two tracts of 120 and 128 acres respectively, but have en-

tered into a contract of sale with him, and he is now in possession, having paid about $25,000 of the purchase price and placed on the land improvements of about the value of $25,000, and the land is now well worth $25 per acre.

It is further alleged, upon information and belief, that of the 3,942 acres released to defendants by Candlish defendants have sold to William Winter 585 acres at $12.50 per acre, to J. R. Quein 693 acres at $14.50 per acre, to O. L. Beeson 199 acres at $14 per acre, to Oliver Newcomer 160 acres at $15 per acre, and to C. H. Burroughs 135 acres at $15 per acre, and that the remainder, which is still held by defendants in their own name, is worth $15 per acre.

Defendants concealed from plaintiffs the sale of the lands to Candlish and assured them that it had fallen through, and they did not learn of the sale until the spring of 1906. With much plenitude of detail the charge of fraud on the part of defendants in buying the property from Nutt and themselves making a sale to Candlish, is reiterated, together with the concealment of these facts from plaintiffs, in violation of the terms of the agreement aforesaid.

Plaintiffs pray that they be allowed to take one-half of the lands, paying defendants therefor at $7.50 per acre, or that they have judgment for $27,250, being one-half of the profits made by defendants on the sale to Candlish, and in the alternative they pray for judgment for the reasonable value of their services in the matter, which is averred to be the sum of $27,250.

By way of answer defendants interposed a general demurrer and general denial, and deny specially the existence of any partnership or agreement between themselves and plaintiffs. With regard to the purchase of the Nutt Ranch and sale thereof to Candlish, it is alleged that they had information regarding this and other property from the tax assessor and went to Beeville for the purpose of looking up such property. Meeting Olander at Beeville, he informed Connable that he would soon have a contract with the owner of the Nutt land for the exclusive sale thereof. Relying upon this, Connable went with Olander to inspect the property, and on their return Olander informed him that he had an option of the property, and defendants could buy it from him. Shortly thereafter Connable took Candlish to see the property, in company with Olander, believing that what Olander had said as to having an option on the property was true, and thereafter relying upon this, and that Olander would sell the land to them, defendants entered into a contract of sale with Candlish on August 10, 1905, but as Candlish would not pay as much cash as Nutt required, defendants entered into negotiations with one Ragley to buy from Nutt and sell to Candlish. Defendants thereupon, on August 10, 1905, wrote to Olander desiring to know what would be satisfactory to him as his profit in the transaction, to which they received no reply. Defendants, wrote other letters and telegraphed to Olander, to which no reply was received, and thereupon, becoming suspicious, Connable went to Beeville for the purpose of learning from the owner whether Olander had an option on the land, when he found that he had no option and no authority to sell the land. Thereupon Connable undertook to negotiate with Nutt directly for the land, and told Olander that he would have

nothing further to do with him in the matter, telling Olander that as the cash payment required by Nutt was more than Candlish would pay, defendants would probably buy the land themselves, to which Olander objected. Defendants had nothing further to do with Olander, and the negotiations with Bagley having failed, they were, in order to comply with their contract with Candlish, obliged to buy the property themselves. Thereafter, on April 16, 1905, by mutual agreement between themselves and Candlish they took back all of the land except 7,000 acres. Subsequently Candlish defaulted in the payments required of him, and the contract became by its terms, and is now, forfeited. The representations of Olander that he had an option on the land, exclusive control of the same, were false and made for the purpose of deceiving defendants, and that at no time up to the filing of the suit in the case (which was May 2, 1907) had plaintiffs set up any claim against defendants.

The pleadings, especially those of plaintiffs, are exceedingly voluminous. We have endeavored to give the substance of both petition and answer. The denial of partnership in the answer was sworn to.

Upon the trial plaintiffs requested the court to submit the cause to the jury upon special issues, whereupon the court required the jury to make answer to the following questions:

"1. Was there, or was there not, such an agreement made between plaintiffs and defendants in July, 1905, as to cooperation and division of profits or commissions, as plaintiff alleges in the third paragraph of his petition?

"You will answer this issue as follows: We find, in answer to issue No. 1, that there was, or we find there was not, such an agreement as stated in this paragraph (according as you find from all the evidence under the instructions heretofore given).

"2. Did, or did not, Olander aid and assist in making the sale or contract of sale to Candlish at the request or with the knowledge and acquiescence of defendants?

"You will answer this issue as follows: We find, in answer to issue No. 2, that Olander did, or that he did not (according as you find from all the evidence).

"3. If you find that Olander did assist in making the sale or contract of sale to Candlish at the request or with the knowledge and acquiescence of defendants, you will say, in answer to this issue No. 3, what, if anything, is the reasonable value of Olander's services in that matter.

"4. Did defendants make out of the sale, or contract of sale, to Candlish, any profits?

"If you find that there were profits you will say so, and say how much, in answer to this issue; if you find there was no profits made you will so say in answer to this issue.

"5. Did, or not, Hahl & Co., defendants, believe when they made the sale to or contract of sale with Candlish, that Olander had a written option or contract with Nutt to sell the place?

"You will answer this issue thus: We find that Hahl & Co. did believe, or did not believe (according as you find from all the evidence),

when they made the sale to or contract of sale with Candlish, that Olander had a written option or contract with Nutt to sell the place.

"6. Did defendants, Hahl & Co., buy the property from Nutt in order to be able to deliver to Candlish because they found that Olander had no written contract with Nutt, or did they buy it from Nutt in order to defraud plaintiff out of what he claimed as profits or pay for their services?

"In answer to this issue No. 6, you will answer according as you may find from all the evidence whether Hahl & Co. bought in order to be able to deliver to Candlish, or whether they bought to defraud plaintiffs out of their claims for commissions or profits.

"7. Did, or not, Olander endeavor to hinder or to prevent defendants from procuring the property known as the Nutt Ranch, or do anything to hinder or prevent the sale of said ranch by defendants to Candlish or any other party?

"In answer to issue No. 7, you will answer as follows: We find that Olander did, or that he did not (according as you will find from all the evidence)."

The jury answered as follows:

"We, the jury, find in answer to issue No. 1 that there was such an agreement as stated in paragraph three of plaintiffs' petition.

"2. We find in answer to issue No. 2 that Olander did aid and assist in making the contract of sale to Candlish at the request or with the knowledge and acquiescence of defendants.

"3. We find in answer to issue No. 3 that Olander did assist in making the sale or contract of sale to Candlish at the request or with the knowledge and acquiescence of defendants, and that the reasonable value of Olander's services in the matter is $17,500.

"4. We find in answer to issue No. 4 that defendants made out of the sale or contract of sale gross profits aggregating $54,500.

"5. We find in answer to issue No. 5 that Hahl & Co. did not believe, when they made the sale to or contract of sale with Candlish, that Olander had a written option or contract with Nutt.

"6. We find in answer to issue No. 6 that defendants, Hahl & Co., bought the propery from Nutt in order to defraud plaintiff out of what he claimed as profits or pay for their services.

"7. (a) We find in answer to issue No. 7, that Olander did endeavor to hinder or prevent defendants from procuring the property known as the Nutt Ranch, and (b) that Olander did not endeavor to hinder or prevent the sale of said ranch by defendants to Candlish or any other party."

By way of preliminary to our findings of fact, the proposition is laid down that such facts as are necessary to support the judgment and are not embraced in the special issues submitted and the verdict thereon, must be presumed to have been found by the court, if there be sufficient evidence in the record to sustain such findings. (Article 1331, Sayles' Civil Statutes; Moore v. Pierson, 100 Texas, 113.)

We adopt the findings of the jury as supported and authorized by the evidence.

The first assignment of error assails the judgment of the court for $17,500 as the reasonable value of appellees' services, on several

grounds, which are set out in the several propositions stated under the assignment.

The first proposition is that plaintiffs, having sued upon a special contract, and the jury having found in favor of the existence of the contract, they could not be entitled, in any event, to a judgment upon *quantum meruit*.

The principle of law that in a suit upon express contract no recovery can be had upon an implied contract or upon *quantum meruit* is well settled, and does not require citation of authority in its support. We do not think it is applicable in the present case. The petition, it is true, sets up an express contract, alleged the performance by appellees, through Olander, of services in the matter of the sale to Candlish, and prayed for judgment under the contract for one-half of the profits made by appellants. The jury found that the contract as alleged was entered into, and that the gross profits made by appellants was $54,-500. All of the facts, however, were set out in the petition, and there was a prayer, in the alternative, for the value of appellees' services, alleged to be $27,250, or a sum equal to one-half of the profits. It is not found by the jury that the transaction was one embraced in the terms of the contract, nor is such finding necessary to support the judgment. On the contrary, the judgment is inconsistent with such finding. The contract provided for cooperation between appellants and appellees in the business of selling lands for other parties. It contemplated that if appellants sold any land of which they were agents to a customer procured by appellees, or *vice versa,* whatever profits should be made should be equally divided, and that in making such sales they should cooperate and mutually assist each other. That is the substance and effect of the contract. In what Olander did he thought he was assisting appellants in making a sale to Candlish of the land of Nutt, but in fact that is not what he was doing. He was assisting appellants to sell their own land to Candlish, appellants availing themselves of his services in this, and in the matter of themselves procuring title from Nutt, to carry out the scheme whereby they made a most profitable bargain, and whether the sale to Candlish was a completed sale or not, and whether he paid for the land or not in accordance with the terms of his contract, nevertheless the undisputed evidence shows that for $7.50 per acre appellants procured title to the land worth from $15 to $20 per acre. But this was not the kind of business embraced in the contract. Moreover, we do not think the evidence shows such a sale to Candlish as would, under the contract, have entitled appellees to one-half of the profits arising therefrom under the contract. The jury does not so find, nor is such finding necessary to support the verdict. Under the pleadings and proof we think appellees were not confined to a recovery under the terms of the express contract, nor debarred from recovery of the value of their services on a *quantum meruit,* according to their prayer. Appellants accepted appellees' services and have reaped the fruits thereof. They can not be heard to deny them the profits earned under the contract without paying them the value of their services.

The second proposition under this assignment is that appellees are not entitled to recover on a *quantum meruit,* because the undisputed

evidence shows, and the jury found, that appellees, after the rendition of the services alluded to and before any contract had been secured from the owner of the land, endeavored to prevent appellants from procuring the land, and thus undertook to nullify any benefit derived by appellants from their services.

The jury, in answer to the seventh special issue, found that "Olander did endeavor to hinder or prevent defendants from procuring the property known as the Nutt Ranch, and that Olander did not endeavor to hinder or prevent the sale of said ranch by defendants to Candlish." The only evidence upon which the first part of this answer could be predicated is that Olander procured Nutt to send the telegram to Burton in Chicago to the effect that he had not sold the land to Hahl & Co., and that Hahl & Co. had no authority to represent him in such sale. Olander's testimony probably furnished the basis for this finding, and his action is explained by the fact, as stated by him, that this was done after he had discovered that appellants were trying to procure the title from Nutt, and themselves sell to Candlish to defraud appellees of their share of the profits. Olander had placed the property with appellants to sell under the agreement between appellees and appellants—had assisted them in making the contract of sale with Candlish under the expectation that they were to share the profits. Appellants had availed themselves of their services in first bringing the property to their notice and afterwards in making the sale to Candlish. They had studiously concealed their action from Olander; in fact had, after said contract with Candlish had been entered into, written him in substance telling him that no such contract had been made. These facts and others are the basis of the jury's finding that appellants' purpose was to defraud appellees. In this state of the case appellees did not forfeit their right to compensation for the value of their services to appellants in enabling them to make this profitable bargain, by trying to block the game of appellants in trying to get the title in their own name, which the jury finds was done to defraud appellees. That the services of Olander did enable appellants to get the land from Nutt as well as to sell it to Candlish is a fact necessary to sustain the judgment and must be found, the evidence sufficiently authorizing such finding.

The third proposition advanced by appellants under the first assignment is that plaintiffs are not entitled to recover upon a *quantum meruit,* because there is no evidence that any services were rendered at the request of defendants, and there is no evidence of an implied undertaking to pay therefor. We think that the finding of the jury in reply to the second question is a sufficient answer to this proposition. We think the first assignment of error should be overruled.

The second assignment of error and the propositions thereunder complain of the action of the court in overruling the motion for a new trial on the grounds (1) that there was no evidence as to the reasonable value of Olander's services, and (2) that the amount found by the jury is excessive.

In support of the first proposition, as to lack of evidence, appellants cite McCormick v. Bush (47 Texas, 195) from the Supreme Court of this State, and Sayers v. Crane, Kansas City Court of Appeals (81

S. W., 475), and Bradner v. Rockdale Powder Co., St. Louis Court of Appeals (91 S. W., 1000). The case of Bush v. McCormick is not in point. In that case it was held that the contract provided the only basis of compensation, and that there was no evidence from which the jury could find the amount to which plaintiff was entitled. The jury gave him what he testified was the reasonable value of his services, but the Supreme Court held he was only entitled to recover the compensation provided under the contract; that is, the proportional value with that which he should receive for the entire service he had agreed to render, and not, on a *quantum meruit,* the value of his services, and that there was no evidence upon which a recovery on this basis could be had.

The other two cases are more nearly in point and strongly tend to support appellants' contention that ·the jury could not, from the nature of the services performed without other evidence of their value, find what was the reasonable value of such services. The holding, however, seems to us to be in ·conflict with Hull v. St. Louis, by the Supreme Court of that State (42 L. R. A., 753). It is not to be denied that the question is one of much difficulty. We are constrained to hold, however, that appellants' contention should not be sustained. The jury were in full possession of all of the details .of the entire transaction of the services performed by Olander and the result to appellants therefrom. We do not think that the nature of the transaction and of the services was such that the jury could not from their own knowledge form an intelligent judgment of the value of the services. It seems to be the well-settled rule that if witnesses claiming to have special knowledge had testified as to the value of the services, and such testimony · had been uncontradicted, the jury might have disregarded such evidence and found contrary thereto, and that such finding would be sustained. (Gainesville, H. & W. Ry. Co. v. Lacy, 86 Texas, 244; Sabine & E. T. Ry. Co. v. Hadnot, 67 Texas, 506; Kennedy v. Upshaw, 66 Texas, 454; Head v. Hargrave, 105 U. S., 45; The Conqueror, 166 U. S., 110; Ewing v. Goode, 78 Fed., 442; Baker v. Richmond C. M. Works, 105 Ga., 225 (31 S. E. R., 426); Hull v. St. Louis, 42 L. R. A., 753, and cases collected in note; Roberts v. New York. El. R. R. Co., 13 L. R. A., 499). This can only mean that the jury may, in such case, find the value upon their own judgment, provided there be enough in the evidence as ·to the character of the services to enable them to judge. This does not necessarily mean that such testimony is not admissible, but that it is not always essential. In the present case, appellants offered no testimony as to the reasonable value of Olander's services, and can not complain that the jury were left to make their own estimate from the facts before them. (Bourke v. Whiting, 19 Colo., 1.) We do not think that there is anything in the nature of the services that would render their value a matter solely of expert knowledge. An examination of the authorities cited shows that many of them refer to services of professional men and those engaged in lines of business quite as much out of the line of the ordinary knowledge of jurors as in the present case.

The second proposition under this assignment presents the point

that the amount awarded by the verdict as the reasonable value of Olander's services is excessive. Many elements entered into the value of the services. It can not properly be said, as stated in appellants' brief, that Olander devoted only one day to this matter. So far as the mere element of time is to be considered, the evidence shows that a great deal more than one day was so employed. The evidence also discloses that the element of time can not be considered, as appears from the great profit made by appellants, largely disproportionate to the time devoted by them to the transaction. The jury found that the profits were $54,500. If the land is as valuable as is shown by the uncontradicted evidence, appellants' profits are very largely in excess of that amount. Through Olander's efforts, or by his assistance, appellants secured the sale of this land at a commission, if the sale had been procured by them as agents of Nutt, of all they could sell it for in excess of $7.50 per acre. If they had done so, under the contract, appellees would have been entitled to one-half of such profits. This shows, to some extent, the value that was put by appellants upon such services. All of these things were properly taken into consideration by the jury in arriving at a conclusion of the value of the services. We can not say that the amount found by them, while quite liberal, is so large as to indicate that it was not the result of a fair consideration of the evidence proper to be considered in arriving at this result. The second assignment of error can not be sustained.

There is no merit in the third assignment. We do not think the findings of the jury in answer to special issue No. 7 are contradictory. Olander may, quite consistently, have endeavored to prevent appellants from acquiring the property in their own name and thus operating outside of the contract with appellees and, as found by the jury, defrauding them, and still not have endeavored to prevent the sale to Candlish direct as agents of Nutt.

We can not agree with appellants that the finding of the jury that Olander did not endeavor to permit a sale to Candlish is against the great weight and preponderance of the evidence to such an extent as would authorize this court to set aside the finding, the trial court having refused to do so. What has been said on this point renders any further discussion of the fourth assignment of error, presenting the question, unnecessary. The assignment must be overruled.

By their fifth assignment of error appellants complain that the finding of the jury that appellants bought the property from Nutt in order to defraud appellees out of what they claimed as profits, is without evidence to support it and against the uncontradicted evidence. This was the issue upon which the case largely turned, and to which most of the evidence in the record is devoted. If we take it as true, as found by the jury, that there was a contract as set out in paragraph three of the petition between appellants and appellees, there is enough in the uncontradicted evidence to authorize the finding that appellants did not act in good faith with Olander. Good faith required that he be advised of the contract of sale to Candlish. On the contrary, it was actively concealed from him. He was kept in ignorance of any intention to buy from Nutt. In fact, appellants proceeded upon the the-

ory, negatived by the finding of the jury, that appellees had no rights in the matter at all and were entitled to nothing for their services except what they might choose to allow them. Without discussing the evidence further, we conclude that it was entirely sufficient to authorize the finding referred to.

The sixth assignment of error is without merit. Hahl testified that the certified copies of the deeds to parties for parts of the 4,000 acres properly showed the number of acres and the price of each sale. It appears that the certified copies were handed to him for this purpose, and in this connection they were introduced. The fact that the documents were certified copies of deed was of no significance. The documents were introduced to show the prices and number of acres sold. Hahl admitted the sale and the execution of the deeds, and that the price and number of acres were as shown by the certified copies of the deeds. If he had stated that these were shown by any other papers then shown to him, it would have been proper to introduce the papers in evidence in connection with his testimony.

Under the view we take of the case the remaining assignments of error present no grounds for reversing the judgment, if error was in fact committed as contended by appellants. We agree that there is a difference between the meaning of the term profits, as stated in special issue No. 4, and of gross profits, as found by the jury, but in the absence of any evidence of expenses, gross profits are profits or net profits. There was no evidence from which the jury could have determined how much was to be deducted from gross profits to find the profits or net profits—no evidence of any expenses at all to be deducted. So in this case there would be no difference between profits and gross profits. Evidence was, indeed, offered by appellants of the amount of bonus paid by them to procure the $10,000 cash to pay Nutt, but this was excluded by the court, and we think properly, under the finding of the jury that the purchase from Nutt was for the purpose of defrauding appellees. They certainly could not be charged with an expense incurred for this purpose.

Whether the evidence was sufficient to show that appellants made profits of $54,500 out of the transaction, or whether this finding is against the great weight and preponderance of the evidence, is immaterial. The judgment did not give appellees what they claimed as one-half of these profits under the contract. We think, however, that the evidence abundantly shows that appellants' profits in the transaction were at least that much. They got the 11,000 acres of land at $7.50 per acre. It is worth at least $15 per acre. Candlish has paid them about $10,000 and has placed improvements on the land which cost him about $30,000. They have sold about 2,000 acres at an average price of about $14 per acre. Whether Candlish ever complies with his contract or not, appellants' profits are at least the amount found.

This disposes of all the assignments of error.

What we have said in disposing of the first assignment of error and the propositions thereunder also disposes of the appellees' cross-assignment, which is overruled. Clearly, if appellees are entitled to recover upon *quantum meruit* the reasonable value of their services, they are-

not entitled to recover one-half of the profits under the express contract. We find no error requiring a reversal and the judgment is affirmed.

*Affirmed.*

Writ of error refused.