CHAMPION v. D'YARMETT.　(No. 2791.)*

Court of Civil Appeals of Texas. Amarillo.
March 9, 1927.

Rehearing Denied April 6, 1927.

1. Mines and minerals ⚷=101—Contract to drill oil well at mutual expense and profit held one of "joint adventure."

Contract of two parties to drill test well for oil and gas, each to be liable for one-half expenses, and to share profits equally, *held* contract of joint adventure, notwithstanding incidental provision for securing additional leases.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Joint Adventure.]

2. Joint adventures ⚷=1—"Joint adventure" is special combination for joint profit without intention to form partnership.

"Joint adventure" is special combination of two or more persons, where in some specific venture a profit is jointly sought without any actual partnership or corporate designation.

3. Joint adventures ⚷=5(1)—Joint adventurer may bring action against coadventurer for damages or expenses without accounting.

Joint adventurer, who has been injured by coadventurer's breach or default under contract, may bring action at law for damages or expenses without an accounting of the joint adventure.

4. Partnership ⚷=17—Whether profit sharers are partners as between themselves depends on intention.

Whether profit sharers between themselves are partners is to be determined from their intention to form, or not to form, a partnership, as evidenced by their contract and conduct.

5. Frauds, statute of ⚷=129(9)—Joint adventure contract held taken out of statute by parties' taking possession of and improving land.

Joint adventure contract of two persons for drilling oil and gas well was taken out of statute, although it incidently provided for assignment of certain leases on land not described, where parties took possession of a 100-acre lease, and for the common benefit made improvements thereon.

Appeal from District Court, Wichita County; P. A. Martin, Judge.

Action by E. C. D'Yarmett against W. H. Champion. Judgment for plaintiff, and defendant appeals. Affirmed.

Kenley, Dawson & Holliday, of Wichita Falls, for appellant.

McDonald & Anderson, of Wichita Falls, for appellee.

RANDOLPH, J. The parties will be designated as in the trial court, in which court the appellee was the plaintiff and the appellant was defendant.

The plaintiff filed this suit to recover the amount of an alleged account, duly itemized, in the sum of $4,421.82. The basis of the cause of action was a written contract between the parties, dated June 7, 1923, which contract is in words as follows:

"This contract and agreement made and entered into by and between E. C. D'Yarmett, party of the first part, and W. H. Champion, party of the second part, witnesseth:

"That, whereas, E. C. D'Yarmett has made certain surveys and leased certain tracts of land in the vicinity of Charlie, Clay county, Tex., and has agreed to drill a test well on said leases to a depth of 2,000 feet unless oil or gas is found in paying quantities at a lesser depth; and

"Whereas, certain landowners have placed their leases in the City National Bank, with instructions that said leases be turned over to E. C. D'Yarmett upon his beginning said test well; and

"Whereas, said W. H. Champion, is the owner of a complete rotary drilling outfit and is equipped to drill said test well; and

"Whereas, both E. C. D'Yarmett and W. H. Champion are desirous of joining their efforts with a view to drilling said test well, to securing additional leases, and in all things working to the mutual advantage and benefit of each other, therefore this contract:

"It is hereby mutually agreed by E. C. D'Yarmett and W. H. Champion that all leases and titles to leases held by each or either of them or by any one for the benefit of either of them, whether in whole or in part, any such interests shall be held for the mutual and equal benefit of both E. C. D'Yarmett and W. H. Champion.

"It is understood and agreed that there are certain interests to be given to Glen D. Peeler and Mr. Smith for services rendered in securing the leases, and that said interests shall be paid out of the general funds or by giving them certificates of interest or leases.

"W. H. Champion agrees to furnish his rotary drilling outfit and to supervise the drilling of the well to the end that same will be carefully drilled, each formation carefully tested and log and that accurate reports shall be made each day that drilling is done.

"Both parties hereto agree to share alike all expenses and obligations incurred through the drilling of said test well and to likewise share all profits arising from all sales of acreage and interests.

"It is agreed that 100 acres shall be set aside with the well, and that 'oil lease interest certificates' shall be issued and used for discharging various obligations and sold for raising funds for carrying on the work. The title to the 100 acres shall remain in the name of E. C. D'Yarmett until the completion of the well, but both Champion and D'Yarmett shall be bound equally for carrying out the obligations in the contract and each shall share equally all receipts from the sale of certificates and shall divide equally any remaining interest after the well has been drilled and paid for. This contract shall apply only to leases and operations near the town of Charlie, Texas, and shall be

binding upon the heirs, successors and assigns to the parties hereto.

"Witness our hands this the 7th day of June, A. D. 1923.        E. C. D'Yarmett.
                    "W. H. Champion."

The plaintiff alleged payment of various sums of money by him in the operation under the contract, and the evidence sustains his allegations.

The case having been submitted to a jury on special issues and answers returned by them, the trial court rendered a judgment in favor of the plaintiff, and defendant has appealed.

Defendant's first proposition presents error as follows:

"Where it appears from the plaintiff's petition and from the contract sued on that the plaintiff and defendant, by said contract, associated themselves together as partners, and that the purpose of the suit is to enforce contribution from the defendant for advances made by the plaintiff for the partnership business, but where plaintiff's said petition does not allege that the partnership has been wound up or that there has been an accounting between the partners, and does not pray for the winding up and accounting of the partnership, the petition is fatally defective, and is subject to general demurrer."

The plaintiff replies to this proposition that a party to a joint adventure may maintain an action at law against his coadventurer to recover advances and to enforce contribution for a proportion of the expenses thereof.

[1] The question presented is whether or not the contract between the parties creates a partnership or simply evidences a joint adventure. If such contract evidences a partnership, then the defendant's proposition should be sustained, but, if it provides only for a joint adventure, this suit was properly brought.

In this case the parties entered into a contract and joined in the one undertaking, that is, to drill a test well for oil and gas, each to be liable for one-half of the expenses and to share equally in the profits. It is true that the purpose of this test well was to enhance the value of certain leases, and the contract also provided for securing additional leases, but these last-named provisions were only incidental to, and dependent upon, the result of the drilling of the test well.

[2] In 33 Corpus Juris, p. 841, it is said:

"A joint adventure has been aptly defined as 'a special combination of two or more persons, where in some specific venture a profit is jointly sought without any actual partnership or corporate designation.'"

As approving this definition, see also, Peck v. Powell (Tex. Civ. App.) 259 S. W. 460; Griffin v. Reilly (Tex. Civ. App.) 275 S. W. 242.

Making a distinction between partners and joint adventurers, 33 Corpus Juris, pp. 841 and 842, says:

"A joint adventure as a legal concept is of comparative recent origin. It is purely the creature of our American courts. At common law an enterprise of a limited character, such as is now called a joint adventure, was regarded in law as merely an informal kind of partnership, and the courts made no attempt to distinguish the one from the other. Such is still the case in England and in Canada, but in the United States the courts, about the middle of the last century, began to find it convenient to draw a distinction between them, and hence there is gradually building up a body of American law applicable to the relation of joint adventurers which may or may not apply to the relation of partners. So far the divergence between the two relations is very slight; so slight, in fact, that it is generally asserted that they are governed by the same rules of law. This is true as regards substantial rights, especially those enforceable in courts of equity; but there is a very marked difference between the attitude of courts of law as respects the two relations, for, whereas these courts will not assume to redress grievances between partners, they will lend their aid in controversies between mere joint adventurers, and will hear and determine actions wherein one of them sues his associate for breach of contract, or for a share of the profits, or losses of the venture, or for contribution for advances made thereto, notwithstanding courts of equity still retain jurisdiction in these matters."

[3] A joint adventurer who has been injured by a breach of the contract by his coadventurer, or by the default of his coadventurer in not paying his part of the expenses, may bring an action at law to redress his grievances, and may in such action recover the damages which he has suffered, or the expenses incurred by him in proportion to the interest of the parties, without the necessity of an accounting as between the joint adventurers. 23 Cyc. p. 461; Hahl & Co. v. Southland Immi. Ass'n, 53 Tex. Civ. App. 592, 116 S. W. 831.

[4] The rules laid down for differentiating a joint adventure from a partnership are clearly given in Cudahy Packing Co. v. Hibou, 18 L. R. A. (N. S.) 1105, as follows:

"In spite of all the discordant decisions, it is reasonably safe, whenever the profit-sharing element is involved in a legal controversy relating to partnership or partnership liability, to accept as sound law certain propositions, which may be grouped in two classes according as the litigation is between or among the profit sharers alone, or between them and third persons.

"In the first class are the following statements:

"1. Whether profit sharers between or among themselves are or are not partners is to be determined by their intention to form or not to form a partnership.

"2. That intention is determined by their contract if it is in writing.

"3. The ordinary legal rules for the construction and interpretation of written instruments apply to partnership and profit-sharing contracts.

"4. If the profit-sharing contract is unwritten and oral, the speech and conduct of the parties in relation to its subject-matter prove their intention to be or not be partners.

"In the second class—when there is a controversy between profit sharers and third persons —the following statements:

"1. That actual partners, whatever their private agreement and however secret they have kept their relation, are liable for partnership debts.

"2. That a profit sharer who is not a real partner is liable for partnership debts if he has held himself out, or knowingly permitted others to hold him out, as a partner to creditors who have given credit to the partnership in ignorance of his actual relation to it.

"3. That profit sharing is evidence of the partnership relation; but that it is not conclusive evidence of it, but at most prima facie or presumptive evidence of the partnership relation.

"4. That this presumption of partnership may be overcome by countervailing proof.

"5. That, when the profit sharer is simply an agent or servant, one who furnishes property, a lender of money, or a mere creditor, who receives the profits as compensation for his services, or the use of his property or money, or in order to collect his debt, without more, he is not liable as a partner, and the presumption is overthrown."

In the case of Chipley v. Smith (Tex. Civ. App.) 287 S. W. 157, where two parties entered into a contract with the owner of certain lands for the purpose of selling the land, and being joint agents of the owner of the land, the transaction between such agents was held by this court to constitute them partners. The Commission of Appeals has recently, in an opinion not yet [officially] published (292 S. W. 209), reversed the judgment of this court, and affirmed the judgment of the trial court, holding that the parties were joint adventurers and not partners.

[5] Appellant, in his motion for rehearing, insists that the contract sued upon by the plaintiff is subject to the objection that it does not comply with the requirements of the statute of frauds, for the reason that such contract does not describe the land affected or the estate therein created; that, the burden being on the plaintiff to show that the contract was unenforceable, and that the lease in escrow in the bank and referred to in the contract not having been introduced in evidence, such leases could not be used to supply the missing description in the contract, and thus cure its deficiencies.

The recovery sought by the plaintiff in this case was for one-half of a sum of money expended by plaintiff for the joint undertaking, and the recital of the ownership of the leases was only incidental to the main object of the contract.

The defendant pleads failure of consideration for the contract, for the reason that the plaintiff had never at any time delivered to him any transfer of any interest in the leases, but nowhere pleads that by any character of fraud or fraudulent representation was he induced to enter into the contract to his injury. He simply stands upon the proposition that it devolved upon the plaintiff to show that he was possessed of regular leases, and further to have tendered to him, the defendant, such interest in same as defendant was entitled to, and that, the plaintiff not having introduced such leases in evidence, his failure to do so defeated his cause of action.

As stated above, the recitals of the contract relating to the leases were incidental only. It is true that they vested in defendant such interest in the leases that were "in the City National Bank, with instructions that said leases be turned over to E. C. D'Yarmett upon his beginning said test well." Whatever interest the plaintiff had in the leases became subject to the contract made between him and the defendant, and there was no necessity for the title to be transferred in order to vest defendant's interest in him. The suit is not based upon or for the enforcement of the leases. Further, the evidence shows that the joint adventurers had taken possession of a 100-acre lease, and that each, for the common benefit, made improvements thereon. The parties having taken possession of said lease and placed thereon valuable improvements, the transaction was taken by their equities from under the statutes of frauds. The same rule is applicable as operates in the case of an oral sale of the land. Ward et al. v. Etier, 113 Tex. 83, 251 S. W. 1028; Wafford v. Branch (Tex. Com. App.) 267 S. W. 260; McDonald et al. v. Whaley (Tex. Civ. App.) 244 S. W. 596; Hunt v. Evans (Tex. Civ. App.) 233 S. W. 854; Shaller v. Allen (Tex. Civ. App.) 278 S. W. 873–876.

The original opinion is withdrawn, and the motion for rehearing is overruled.

The judgment of the trial court is in all things affirmed, as in the original opinion.