**E. J. GRAY, Appellant,**

v.

**Audrey WEST, Appellee.**

**No. 9128.**

Court of Civil Appeals of Texas, Amarillo.

Oct. 31, 1980.

Rehearing Denied Nov. 21, 1980.

McCleskey, Harriger, Brazill & Graf, George H. McCleskey, Lubbock, for appellant.

Kirby, Ratliff, Sansom, Manning & Greak, Nolan Greak, Littlefield, for appellee.

COUNTISS, Justice.

This is a breach of contract suit by appellee Audrey West (hereafter "West") against C & G Enterprises, James Christesson and appellant E. J. Gray (hereafter "Gray"). Because of errors in the charge of the court, we reverse and remand.

West is a farmer who grows and sells hay in both baled and cubed form. In December, 1976, he was contacted by James Christesson who wanted to purchase a substantial number of hay cubes. After several discussions, West and Christesson signed a written contract for the sale by West of 7,000 tons of hay cubes at $100 per ton. The cubes were to be loaded at Sudan, Texas and paid for at the time of shipment, with final delivery of, and payment for, all of the cubes to be completed by April 20, 1977. The contract was signed by West as seller and "C & G Enterprises by James Christesson" as purchaser.

West delivered approximately 316 of the 7,000 tons called for by the contract. The market price for hay cubes declined substantially thereafter and the purchaser refused to take delivery of the remaining cubes. This suit was then instituted by West.

The primary dispute in the case is whether appellee Gray is liable for the breach of the contract as a partner or joint adventurer of Christesson. West contended that Gray was acting in one of those capacities. Gray contended he was only loaning money to Christesson through G & R Distributors, a corporation of which Gray was president. The jury found Gray to be a joint adventurer and found damages to West totaling $309,501.84. The judgment rendered by the trial court awarded that sum to West against C & G Enterprises, Christesson and Gray.[1]

In this court, Gray advances 54 points of error grouped into eight arguments. We will first consider arguments advanced under points of error 12, 23 and 28 complaining of various definitions in the charge of the court. The definitions in questions are as follows:

A "partnership" is an association of two or more persons as co–owners in a business for profit.

A "joint adventure" is created when two or more persons engage in the joint prosecution of a particular transaction for their mutual benefit or profit.

A partnership or joint adventure may be created by express agreement between parties, or it may be implied from their conduct. A person may become a partner or joint adventurer by words spoken or by conduct if by such words or conduct he represents himself to be a partner or joint adventurer or consents for another to represent him to be a partner or joint adventurer to a third person who acts in good faith upon such representations to his detriment. If such representation or consent is made or given in a public manner, it is not necessary that the same be communicated directly to the person relying upon it, to support the existence of the partnership or joint adventure, and the partner or joint adventurer making or giving such representation or consent need not have specific knowledge of the transaction wherein reliance is placed upon such representation or consent, to be bound to the same.

The instructions were pertinent to special issue number 1, which read, and was answered by the jury, as follows:

Do you find from a preponderance of the evidence that E. J. Gray, individually, became a partner or joint adventurer with James Christesson, or with C & G Enterprises, or in C & G Enterprises, in the purchase of the West hay cubes?

If you find a preponderance of the evidence that E. J. Gray was either a partner or a joint adventurer in one or more of the business entities specified, you will answer by saying, "He was a partner," or "He was a joint adventurer," as you so find, but if you do not so find by a preponderance of the evidence, you will answer "no".

ANSWER: <u>Joint Adventurer 12–0</u>

In order to properly discuss the points of error under consideration, it is necessary to review certain principles of law concerning joint adventures. The Texas courts have encountered difficulty in classifying a joint adventure. Thus, it has been stated that it is a partnership, *Rice v. Lambert*, 408 S.W.2d 287 (Tex.Civ.App.–Corpus Christi 1966, no writ); is not a partnership, *Champion v. D'Yarmett*, 293 S.W. 587 (Tex.Civ. App.–Amarillo 1927, writ ref'd); is a legal entity in the nature of a partnership, *Brown v. Cole*, 155 Tex. 624, 291 S.W.2d 704 (1956); and is a legal entity distinct from a partnership, *Tex–Co Grain Co. v. Happy Wheat Growers, Inc.*, 542 S.W.2d 934 (Tex. Civ.App.–Amarillo 1976, no writ). Legal writers have encountered the same difficulty, stating that a joint adventure is governed by the same rules as a partnership, H. Kendrick & J. Kendrick, Texas Transaction Guide § 86.03[4] (1980); is a type of partnership, not a separate kind of business unit, 19 R. Hamilton, Business Organizations § 4 (Texas Practice 1973); and is a partnership formed to carry out a single

---

1. Although West recovered judgment against all three defendants, only Gray has perfected an appeal from the judgment.

transaction or limited undertaking, 8 W. Dorsaneo III & P. Winship, Texas Litigation Guide § 180.01 (1980).

Joint adventures are a creation of American law, *McNeil v. Barrow*, 237 S.W.2d 730, 734 (Tex.Civ.App.–Amarillo 1950, no writ), constructed in order to permit a corporation to engage in partnership activities. Although it was ultra vires for a corporation to participate in a partnership it was permissible for it to participate in a joint adventure. 19 R. Hamilton, Business Organizations § 4 (Texas Practice 1973). That historical distinction is now academic in Texas because the Texas Business Corporation Act and the Texas Uniform Partnership Act specifically permit a corporation to be a partner in a partnership. Tex.Bus. Corp.Act Ann. art. 2.02 A(18) (Vernon 1980); Tex.Rev.Civ.Stat.Ann. art. 6132b, § 6–A(1)(a) (Vernon Supp.1980).

In this case, there is no legal or logical reason for distinguishing a joint adventure from a partnership. We will, therefore, apply all principles of partnership law to the joint adventure in question.

 Participants in a joint adventure are engaged in the joint prosecution of a particular or singular transaction for mutual benefit or profit. *Brown v. Cole*, 155 Tex. 624, 291 S.W.2d 704 (1956). The elements of a joint adventure are: (1) mutual right of control, (2) community of interest, (3) agreement to share profits as principals, and (4) agreement to share losses, costs or expenses. *Coastal Plains Development Corp. v. Micrea, Inc.*, 572 S.W.2d 285, 287 (Tex.1978); *Chandler v. Herndon*, 450 S.W.2d 703, 706 (Tex.Civ.App.–Corpus Christi, 1970, writ ref'd n. r. e.). An entity seeking to establish a joint adventure with another entity must establish those elements.

 If a third party is seeking to prove that other entities are operating together as joint adventurers, it can also do so by establishing the above elements. If the third party cannot establish the elements of a joint adventure, it is not precluded from imposing liability on the entities in question, however. Under Texas partnership law, liability can be imposed by estoppel. Section 16(1) of Art. 6132b states:

(1) When a person, by words spoken or written or by conduct, represents himself, or consents to another representing him to any one, as a partner in an existing partnership or with one or more persons not actual partners, he is liable to any such person to whom such representation has been made, who has, on the faith of such representation, given credit to the actual or apparent partnership, and if he has made such representation or consented to its being made in a public manner he is liable to such person, whether the representation has or has not been made or communicated to such person so giving credit by or with the knowledge of the apparent partner making the representation or consenting to its being made:

(a) When a partnership liability results, he is liable as though he were an actual member of the partnership;

Tex.Rev.Civ.Stat.Ann. art. 6132b, § 16(1) (Vernon 1970).

Thus, the third party may be able to impose liability on the putative joint adventurers by establishing the foregoing elements of joint adventure (partnership) by estoppel.

In this case, West alleged both joint adventure and joint adventure by estoppel against Gray. There was evidence sufficient to create a factual controversy under both theories. The evidence was, however, disputed on almost all of the elements under both theories.

 As is apparent from the instructions and issue set out above, the trial court elected, under Rule 277, Tex.R.Civ.P., to submit the ultimate liability questions in the case broadly, accompanied by explanatory instructions and definitions. We find no fault with the method of submission used by the trial court; it is, in fact, the preferable method under current Texas practice. Pope, The State of the Special Verdict, 11 St. Mary's L.J. 1 (1979). When a broad submission is used, however, it is essential that the accompanying instructions and definitions fully advise the jury of

the constituent elements that must be established before the jury can find the ultimate fact. Thus, when the jury is asked whether Gray became a joint adventurer with Christesson, it must, at a minimum, be told that the elements of the joint adventure West is seeking to establish are (1) mutual right of control, (2) community of interest, (3) agreement to share profits as principals and (4) agreement to share losses, costs or expenses.

■ In this case, the trial court advised the jury that "[a] joint adventure is created when two or more persons engage in the joint prosecution of a particular transaction for their mutual benefit or profit." The definition is a correct general statement. *Brown v. Cole, supra.* It is, however, incomplete because it does not advise the jury of all of the elements, set out above, which West was required to prove before the jury could find that Gray was a joint adventurer with Christesson.[2] For that reason, the definition is erroneous and point of error 12 must be sustained.

■ We find a similar problem with the trial court's instruction on the elements of joint adventure by estoppel. The instruction embodies some, but not all, of the elements set out in section 16(1) of art. 6132b quoted above. For example, the statute speaks specifically of the giving of credit to the actual or apparent partnership on the faith of a representation of partnership; the instruction by the trial court does not mention the giving of credit but instead speaks generally of acts taken in good faith (by the third party) "upon such representations to his detriment." To the extent it is possible to do so and remain comprehensible to a lay jury, the instruction should follow the language of the statute and, in any event, it must embody all of the elements set out in the statute. Gray's points of error 23 and 28 must also be sustained. Point 26 is overruled.

■ By arguments advanced under points of error 11, 24, 25, 27 and 29, Gray

contends that the charge should have submitted the elements of joint adventure and joint adventure by estoppel to the jury as issues instead of attempting to set them out in an instruction. For the reasons stated above in our discussion of the method of submission used in this case, we find no fault with the approach adopted by the trial court, so long as the jury is properly advised of the elements that must be established in order for the jury to make the ultimate finding. Since the elements of joint adventure by estoppel differ from the elements of joint adventure, however, it would be preferable to draw the instructions and issues so the courts can determine which, if either, is found by the jury.

The errors discussed above require us to reverse and remand the case for new trial. We have carefully examined Gray's remaining points of error but find no basis to render judgment in his favor. Since many of the matters raised will undoubtedly recur if the case is retried, however, we will discuss additional points. Point of error 1, complaining of the failure of the trial court to grant a continuance, is moot in view of our disposition of this appeal and thus is overruled.

■ Under points 2, 9, 13, 15, 17, 19, and 20, Gray contends there is no evidence of the various elements that must be established in order to hold Gray individually liable as a joint adventurer. We have reviewed the evidence in accordance with the standards stated in *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965), and we are satisfied there is sufficient evidence to create fact questions on each of the elements of joint adventure. The points are overruled.

■ By points 5 and 6 Gray contends the trial court erred in failing to submit specific issues inquiring whether Gray was acting individually or through a corporate entity. The method of submission used by the trial court adequately submits the issue. The points are overruled.

2. The definition of "partnership" is deficient for the same reason. *See Taylor v. Lewis*, 553 S.W.2d 153, 158 (Tex.Civ.App.-Amarillo 1977, writ ref'd n. r. e.).

■ Under point 7 Gray argues that West must, and did not, penetrate the corporate veil of G & R Distributors; therefore, Gray could not be held individually liable. The argument misconceives the nature of this suit. West sued Gray individually on the theory that Gray participated individually in the business transaction in question. West was not attempting to establish Gray's personal liability as alter ego of G & R Distributors. In that posture, Gray's contention that he acted only through the corporation and not individually is an affirmative defense under Rule 93, Tex.R.Civ.P. His unsuccessful reliance on the defense did not place any burden on West to pierce a corporate veil because the corporate veil was never drawn. The point is overruled.

■ Point of error 8 states the court erred in failing to ask the jury whether the contract in question was breached. Our review of the record reveals that breach of the contract was established as a matter of law; therefore, no issue was necessary. The point is overruled.

■ By point of error 10 Gray advances error in the trial court's overruling of his special exception attacking West's pleadings of joint adventure as legal and evidentiary conclusions. After reviewing all of the pleadings, we are satisfied West's pleadings as a whole gave fair notice to Gray of the facts to be proven and the theories upon which West was relying. Rule 45, Tex.R.Civ.P. The point is overruled.

■ In point of error 22, Gray contends the instruction on joint adventure by estoppel was deficient because it did not tell the jury Gray must have represented himself as a partner or joint adventurer or consented to such representation "at a time prior to the date Mr. West entered into the contract." Section 16 of Art. 6132b imposes liability if the third person has "on the faith of such representation, given credit to the actual or apparent partnership...." Thus, there must be reliance on a representation of partnership when credit is given and the jury should be so instructed. The trial court did so here, by keying its instruction to "a third person who acts in good faith upon such representation...." That type of instruction is in harmony with the statute and is sufficient to advise the jury of the time factors involved. Point of error 22 is overruled.

By points of error 30 and 31, Gray contends the following instruction by the trial court is erroneous in its inclusion of the italicized phrase:

A corporation may be a partner or joint adventurer, and an individual is entitled to act through a corporation chartered for management by its stockholders, even though he may be the sole shareholder of the corporation, *provided he affords fair notice, by words said or acts done, or both, that he is acting through the corporation, and not individually* (emphasis added).

■ We find no fault with the instruction. As discussed above, Gray's contention that he was acting for his corporation was an affirmative defense on which he had the burden of proof. Rule 93, Tex.R.Civ.P.; *Seale v. Nichols* 505 S.W.2d 251 (Tex.1974). Certainly one element of his proof is notice in some form or fashion to the party he is dealing with that he is acting as a corporate representative and not individually. *See, e. g., Seale v. Nichols, supra,* at 255; *Carter v. Walton,* 469 S.W.2d 462, 472 (Tex.Civ.App.–Corpus Christi 1971, no writ). The point is overruled.

By points of error 33 through 54, Gray attacks special issue number 2, the damage issue, and the jury's findings thereon. The issue with the jury's answers and unsolicited comments italicized, is as follows:

What sum or sums of money, if any, if paid in cash now, do you find from a preponderance of the evidence would fairly and reasonably compensate Audrey West for breach of contract by James Christesson and E. J. Gray, or either of them, if any such breach there was?

In answering this question, you will not include any amount for any damages resulting from the failure, if any, of Audrey West to minimize his losses, if any,

in such manner as the same would have been minimized under the same or similar circumstances by a person exercising ordinary care.

"Ordinary" care means such degree of care as would be exercised under the same or similar circumstances by an ordinary prudent person.

Answer in dollars and cents, if any, in the spaces for answer immediately following each particular hereinafter set forth:

ANSWERS

a. Hay cubes shipped and delivered, if any, for which no payment has been made to Audrey West. 13314.25

*Vote 12-0*

b. Loss to Audrey West, if any, measured by the difference between the price realized by Mr. West from resale made in good faith and in a commercially reasonable manner, if such resale was made in good faith and in a commercially reasonable manner, of hay cubes refused by E. J. Gray and James Christesson, or either of them, and the contract price specified to be paid for such cubes by James Christesson and E. J. Gray, or either of them, if any such contract price there was. `$228,497.59

*Vote 12-0*

c. Commercially reasonable charges and expenses, if any, incurred by Audrey West in the transportation, care and custody of the hay cubes refused by James Christesson and E. J. Gray, or either of them, in connection with the handling and resale of such hay cubes following such refusal, if any refusal there was. 67,690.00

*Voted 0-12 not to award Storage of*............ 90,000.00

*Voted 12-0 to award interest of*............... 60,000.00

*Voted 12-0 to award Ins*....................... '7,690.00

 67,690.00

---

Under points of error 33 and 34, Gray contends the damage issue should have been submitted conditionally and separately as to Gray and Christesson. The points do not present reversible error. Damage issues are rarely submitted conditionally under our method of submission because a conditional submission usually has the practical effect of informing the jury of the effect of its answers to the liability issues. Gray has not demonstrated a valid reason to depart from the usual procedure in this case. Nor has Gray demonstrated a valid reason to submit separate damage issues for Gray and Christesson. The jury was told to assess damages caused

by Gray and Christesson or either of them. The apportionment of the damages in the case was a legal question for the trial court to resolve from the jury's answer to the liability issue. The points are overruled.

Points of error 35 through 43 are directed to issue 2(b), which pertained to the damages incurred by West on the undelivered cubes. West elected to proceed under section 2.706 of the U.C.C. when he resold the hay cubes after the contract was breached. Tex.Bus. & Com.Code Ann. § 2.706 (Vernon 1968). The section permits recovery of "the difference between the resale price and the contract price together with any incidental damages . . . but less expenses saved in consequence of the buyer's breach" if the resale is made in good faith and in a commercially reasonable manner. § 2.706, *supra*. Gray's primary arguments are that the jury should have been submitted separate special issues inquiring whether the resale was made in good faith or in a commercially reasonable manner, and whether there were expenses saved as a consequence of the breach. Gray also contends there is no evidence of reasonable notification by West of his intent to resell as required by section 2.706(c).

■ Issue 2(b) clearly conditions the award on a resale in good faith and in a commercially reasonable manner. Since there was no evidence of expenses saved, it was not necessary for the court to include that element in the issue. The broad submission is authorized by Rule 277, Tex.R. Civ.P. and we find no error in it.

■ The evidence is, at best, equivocal on whether West formally notified Gray that the cubes would be resold. West testified, however, to many conversations with Gray wherein he urged Gray to take and pay for the cubes. Gray consistently maintained that he was not obligated under the contract and testified he told West, "you better sell it [the cubes] if you get the chance." Under the circumstances, no further notification to Gray was necessary. Points 35 through 43 are overruled.

In his final eleven points of error, Gray attacks the award of incidental damages under special issue 2(c). Section 2.706(a) of the U.C.C. permits the seller to recover incidental damages. Tex.Bus. & Com.Code Ann. § 2.706(a) (Vernon 1968). Section 2.710 of the Code defines incidental damages as including "any commercially reasonable charges, expenses or commissions incurred in stopping delivery, in the transportation, care and custody of goods after the buyer's breach, in connection with return or resale of the goods or otherwise resulting from the breach." Tex.Bus. & Com.Code Ann. § 2.710 (Vernon 1968).

West presented evidence of alleged incidental damages totaling $186,655.87. In detailing the damages, he testified he lost storage charges of $90,981.00 during the time when he was attempting to dispose of the cubes. The cubes were stored in his own warehouse and he based the charges on the fee he customarily charged for storage. West then testified he incurred interest expenses of $74,278.87 on money borrowed to finance the cubes, insurance expenses of $13,706.00 for insurance on the cubes and insurance expenses of $7,690.00 on additional collateral required by his creditor after the value of the cubes declined.

In response to special issue 2(c), the jury awarded incidental damages of $67,690.00. The jury's notation on the charge indicates the award was computed by allowing $60,-000.00 for interest and $7,690.00 for insurance. In their briefs, both parties agree that the award is composed of the two items listed by the jury.

■ Gray's argument in support of the points of error under consideration is based primarily on three propositions. First, he contends the trial court erred in including the word "transportation" as an element of damages in issue 2(c) because there was no evidence of transportation expenses. We agree. If, upon retrial of this case, the evidence is still absent, the trial court should not include that element in the damage issue. Point of error 49 is sustained.

Gray next argues that the alleged incidental damages cannot be recovered because there was no pleading or evidence that they were within the contemplation of the parties when the contract was signed and no instruction by the trial court that they must be. The common law rule upon which Gray relies has not been incorporated into section 2.710 of the Code.[3] The seller is permitted to recover all "commercially reasonable charges, expenses or commissions . . . resulting from the breach." §§ 2.706(a), and 2.710, *supra*. There is no requirement that the seller prove that these items were within the contemplation of the parties, so long as they fit within the definition of incidental damages. Points of error 44, 46, 53 and 54 are overruled.

Gray next argues that the damages awarded by the jury are not incidental damages recoverable under sections 2.706 and 2.710. Since the parties agree that the jury only awarded interest on money borrowed by West to finance the cubes and insurance expenses on additional collateral required by West's creditor, we will consider only those items.

We have not found any Texas cases on the interest question. The majority of cases from other jurisdictions, however, allow recovery of actual interest incurred between breach and resale as incidental damages. *Intermeat, Inc. v. Am. Poultry Inc.*, 575 F.2d 1017, 1024 (2nd Cir. 1978); *Neri v. Retail Marine Corp.*, 30 N.Y.2d 393, 334 N.Y.S.2d 165, 285 N.E.2d 311 (1972); *See Nobs Chemical, U. S. A., Inc. v. Koppers Co., Inc.*, 616 F.2d 212, 216 (5th Cir. 1980). We believe it is proper to classify such an expenditure as a commercially reasonable expense flowing from the breach. We hold, therefore, that actual interest expenses on money borrowed by the seller to finance the subject matter of the contract, incurred after and as a result of a buyer's breach, are incidental damages under section 2.710.

We have not found any cases from any jurisdiction discussing insurance in the context in question here. There is authority that insurance on the subject matter of the contract is a proper incidental damage, *Neri v. Retail Marine Corp., supra*, but no authority, so far as we can determine, that additional insurance on additional collateral is incidental damage. The comment to section 2.710 of the U.C.C. refers to "normal and necessary additional elements of damage flowing from the breach." The additional insurance here is so remote from the initial contract and breach that we do not believe it can be classified as a normal additional element of damage. We hold, therefore, that insurance expenses incurred on additional collateral required by the seller's lender because the market value of the subject matter of the contract has declined is not an incidental expense recoverable under section 2.710. Point of error 45 is sustained, insofar as it pertains to insurance on the additional collateral; otherwise, it is overruled.

We have fully considered all points of error and all arguments advanced by Gray. Any matters not specifically discussed and passed on are overruled. The judgment of the trial court is reversed and the case is remanded.

---

**3.** *See* Tex.Bus. & Com.Code Ann. § 2.715(b) (Vernon 1968) pertaining to *consequential* damages by a buyer, where at least a remnant of the common law rule has been retained. Section 2.710 does not provide for recovery by a seller of consequential damages.